**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **N. B.** by and through his mother, | ) | |
| **ANGELA BUCHANAN,** individually | ) | |
| and on behalf of a class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. |
| vs. | ) | |
| | ) | Judge: |
| **JULIE HAMOS**, in her official capacity | ) | |
| as Director of the Illinois Department of | ) | Magistrate: |
| Healthcare and Family Services, | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

## COMPLAINT

Now comes the Plaintiffs, by and through their attorneys, Robert H. Farley, Jr., Ltd.,

Michelle N. Schneiderheinze and Cahill & Associates and file the following Complaint against

the Defendant as follows:

## I.  INTRODUCTION

1.  The Plaintiff and Class are Medicaid-eligible children with behavioral or emotional

disorders who need intensive mental (behavioral) health services in order to correct or ameliorate

their conditions.  The Plaintiff and Class are entitled to receive these medically necessary

services in the community under the Early and Periodic Screening, Diagnostic, and Treatment

Services (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act") 42.

U.S.C. Sec. 1396 *et. seq*  and under the Americans with Disabilities Act (ADA) and the

Rehabilitation Act.  The Plaintiff and Class should not be required to become institutionalized in

1

order to receive medically necessary services to correct or amerliorate their conditions. .

2.  The Plaintiff and Class have experienced unnecessary institutionalization and other serious harms as result of the Defendant's failure to provide or arrange for medically necessary, mental health / behavioral services required under the EPSDT provisions of the Medicaid Act. The denial of EPSDT services results in significant harm to children with behavioral or emotional disorders, including exacerbation of their conditions, deterioration to the point of crisis, and unnecessary institutionalization in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

.    3(a).  The Defendant is well aware that children (up to the age of 21) with severe developmental disabilities, severe mental illnesses or severe emotional disorders fail to receive the medically necessary home and community-based services that the Federal law requires Illinois to provide to children who have behavioral or emotional disorders.

3(b).  In March, 2010, the Illinois Department of Human Services (DHS) issued a report to the Governor and the General Assembly which stated that during Fiscal Year 2009, the State identified 18,134 children and adolescents through the age of 21 with severe mental illnesses and severe emotional disturbances.  Only 220 of these children with severe mental illnesses and emotional disturbances (MI/SED) received intensive community based services, with 145 children receiving services in their own home through the Individual Care Grant Program (ICG) and 75 children and adolescent receiving services in Child Group Homes.  (See "Institutional Services for Children with Developmental Disabilities, Severe Mental Illness at http://www.dhs.state.il.us/page.aspx?item=52428)   The DHS Community Services Act Report, dated January 1, 2009, noted that In Fiscal Year 2007, the Individual Care Grant program

2

received 1,051 requests for applications for intensive community based services and in the same year only 81 grants were awarded.

3(c).  In May, 2011, the Illinois Department of Human Services through the Division of Developmental Disabilities issued a report, "Prioritization of Urgency of Needs for Services" ("PUNS") and identified 496 children who are not receiving services and who have an "Emergency Need" for services in that the person needs in-home or day supports immediately due to the persons's serious health or behavioral issues.  The State PUNS also identified another 1,627 children who are not receiving services and who have a "Critical Need" for supports in that the child has behaviors that warrant additional supports to live in community.

3(d).  The State of Illinois Community & Residential Services Authority ("CRSA") in its Fiscal Year 2009 Annual Report at page 1, stated the following:

> Children who exhibit multiple impairments/disabilities, including behavior disorders or severe emotional disturbances historically present challenges to Illinois' state service system as agencies and schools try to address the diverse service needs of this population. Many of these children do not clearly fit the service eligibility criteria or funding streams of state and local public agencies and unacceptable numbers of children and families go un-served or are underserved by the very systems established to help them.

CRSA  stated that the following are sub-populations of children exhibiting severe emotional disturbance and behavior disorder who are at significant risk of 'falling between the cracks' of the child and adolescent service system.  (Id. at pages 8-9)

-  Children who need intensive clinical/behavioral interventions but who do not meet the state mental health criteria to qualify for funding of needed residential treatment.

- Children with cognitive impairments in combination with other disabilities.

- Families of adopted children in crisis.

3

- Children who need specialized treatment to address inappropriate sexual behavior.

- Children with Brain Injuries.

CRSA has stated that it has observed that child and family teams and other service planning networks often decide that a child requires treatment in an out-of-home/out-of-community residential setting primarily because the needed community-based services are either not available in the child's community, are not available at the level of intensity needed by the child and family or because coordination among community-based providers is weak or absent. (Id. at p. 11)

4. As a result of the Defendant's continued over reliance on institutions, hundreds of children with behavioral and emotional disorders cycle through hospitals, emergency rooms, acute care facilities, and residential treatment centers without obtaining any long-term relief. These placements may offer a brief period of respite, but the benefits are fleeting at best. The State of Illinois system of mental health care is so weak and uncoordinated that most children are released from facilities with little or ineffective follow-up community mental health care. The services offered by the community mental health center after discharge from an institutional setting consists of little more than minimal medication management and outpatient counseling once a week for one hour, which is inadequate for a child with significant behavioral and emotional problems. Not surprisingly, many children and families find themselves thrown back into a crisis, forced to repeat the cycle of institutionalization yet again. Under the current system, the Defendant opts to fund children living with behavioral and emotional problems in hospitals and institutions, rather than providing the intensive, individualized care that allows children to remain in their homes and communities.

4

5. The Plaintiff and the Class are Medicaid-eligible persons under the age of 21, who have behavioral or emotional disorders, but who are not being provided with the treatment required by federal law. As Medicaid-eligible persons under the age of 21, the Plaintiff and Class are entitled to receive Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT) which includes services necessary to correct or ameliorate mental heath conditions. 42 U.S.C. Sec. 1396a(a)(43)(C); 42 U.S.C. Sec. 1396d(a)(4)(B); 42 U.S.C. Sec. 1396d(r)(5); 42 C.F.R. Sec. 441.55. Despite widespread agreement among mental health experts that children with significant emotional or behavioral problems need intensive home and community-based services, the Plaintiff N.B. has never received such services. The Plaintiff and Class have been segregated in a restrictive institutional setting and are at risk of institutionalization due to the lack of medically necessary community-based services. The Plaintiff and Class have been and are being harmed because he or she is not receiving medically necessary mental health / behavioral services and have been needlessly institutionalized or are at risk of needless institutionalization. The Defendant's reliance on unnecessary institutionalization, has caused or will continue to cause, serious, long term and irreversible harm to the Plaintiff and the Class.

6. The Plaintiff, individually and on behalf of the Class, seeks prospective injunctive relief ordering the Defendant to comply with federal law mandates to provide the Plaintiff and Class who have behavioral or emotional disorders, the medically necessary home and community-based services to treat or ameliorate their disorders. The violations set forth in this Complaint have been acknowledged by State legislatures, mental health professionals, and the Defendant, but little has been done to address the problem. Declaratory and injunctive relief is necessary to ensure that the Plaintiff and the Class receive the treatment and services to which

5

they are entitled by law.

7.   Due to the failure of the Defendant to provide funding for community-based services, the Plaintiff, individually, (and not on behalf of a class) is seeking monetary damages against the Defendant under the Rehabilitation Act as the result of the aggravation of his existing mental and emotional conditions due to the lack of funding for community based services.

## II.   JURISDICTION & VENUE

8.   This is an action for declaratory and injunctive relief to enforce the rights of the Plaintiff and the Class to under the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act"); the Americans with Disabilities Act, 42 U.S.C. Sec. 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a).  The Plaintiff's claim for monetary damages is authorized under 28 U.S.C. Sec. 2201-02 and 42 U.S.C. Sec. 1983 and under the Rehabilitation Act.

9.   This Court has jurisdiction over Plaintiffs federal law claims pursuant to 28 U.S.C. Sections 1331 and 1343.  The Plaintiff's and Class claim for declaratory and injunctive relief are authorized under 28 U.S.C. Sec. 2201-02 and 42 U.S.C. Sec. 1983.  The Plaintiff's claim for monetary damages is authorized under 28 U.S.C. Sec. 2201-02 and 42 U.S.C. Sec. 1983 and under the Rehabilitation Act.

10.   Venue is proper in the Northern District of Illinois under 28 U.S.C. Sec. 1391(b).

## III.   PARTIES

11(a).  The Plaintiff, N.B. is a fourteen year old boy who since June, 2009 has experienced approximately fourteen  (14) placements in the psychiatric hospital, Streamwood Behavioral Hospital.  When N.B. is hospitalized, he stays an average of three weeks and is

6

placed on the Autistic Unit and has 1:1 observation at all times.

11(b).  N.B. has a diagnosis of Autism Spectrum Disorder, Intermittent Explosive Disorder, Mood Disorder NOS, Disruptive Behavior Disorder NOS, and Moderate to Severe Mental Retardation.  N.B. has a significant history of maladaptive and self-injurious behaviors, including hitting himself in the head, scratching himself and biting his hand.  N.B. is extremely aggressive.  N.B. is non verbal.

11(c).  After N.B. has been discharged from the hospital, the family and outpatient services have been unsuccessful at maintaining a sufficiently supervised and therapeutic setting. As a result, N.B. ends up in crisis again, leading to yet another hospitalization.

11(d).  N.B. needs a residential treatment setting or facility to correct or ameliorate his mental and behavioral conditions.  N.B. needs a residential treatment setting or facility for the maximum reduction of his mental disability and for the restoration of him to the best possible functional level.

11(e).  Unless N.B. receives the necessary intensive residential services, he will likely be at risk for many more hospitalizations.

11(f).  N.B. brings this action through his mother and next friend, Angeline Buchanan.

12.  The Defendant, Julie Hamos, is the Director of the Illinois Department of Healthcare and Family Services (HFS) and is being sued in her official capacity.

## IV.   CLASS ACTION ALLEGATIONS

13.  Plaintiff bring this action on behalf of himself and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

14.  The Class consists of the following:

> All current and future recipients of Medicaid in the State of Illinois
> with behavioral or emotional disorders under the age of twenty-one
> who are not receiving medically necessary home andcommunity-based
> services to treat or ameliorate their disorders, and are currently
> segregated, or who have been segregated or at risk of  segregation
> for the purpose of receiving treatment and services.

15.  The Class is so numerous that joinder of all persons is impracticable.  There are

thousands of children with a behavioral or emotional disorder in Illinois.

(a)  In March, 2010, the Illinois Department of Human Services (DHS) issued a report to the Governor and the General Assembly which stated that during fiscal year 2009, the State identified 18,134 children and adolescents through the age of 21 with severe mental illnesses and severe emotional disturbances.  Only 220 of these children with severe mental illnesses and emotional disturbances (MI/SED) received intensive community based services, with 145 children receiving services in their own home through the Individual Care Grant Program (ICG) and 75 children and adolescent receiving services in Child Group Homes.  (See "Institutional Services for Children with Developmental Disabilities, Severe Mental Illness at http://www.dhs.state.il.us/page.aspx?item=52428)  In Fiscal Year 2007, the Individual Care Grant program received 1,051 requests for applications for intensive community based services and in the same year only 81 grants were awarded.  (See DHS Community Services Act Report, dated January 1, 2009)

(b)  In May, 2011, the Illinois Department of Human Services through the Division of Developmental Disabilities issued a report, "Prioritization of Urgency of Needs for Services" ("PUNS") and identified 496 children who are not receiving services and who have an "Emergency Need" for services in that the person needs in-home or day supports immediately due to the persons's serious health or behavioral issues.  The State also identified another 1,627 children who are not receiving services and who have a "Critical Need" for supports in that the child has behaviors that warrant additional supports to live in community.

(c)   The State of Illinois Community & Residential Services Authority ("CRSA") in its fiscal year 2009 Annual Report at page 1, stated the following:

> Children who exhibit multiple impairments/disabilities, including
> behavior disorders or severe emotional disturbances historically
> present challenges to Illinois' state service system as agencies and
> schools try to address the diverse service needs of this population.
> Many of these children do not clearly fit the service eligibility criteria
> or funding streams of state and local public agencies and unacceptable

numbers of children and families go un-served or are underserved by the very systems established to help them.

The class members have limited financial resources and are unlikely to institute individual actions.

16.  The claims of the class members raise common questions of law and fact.  These include:

(a)  Whether the Defendant's failure to provide medically necessary home and community-based services to children with behavioral and emotional disorders violates the EPSDT mandate of Title XIX of the Social Security Act.

(b) Whether the Defendant violated the Americans with Disabilities Act (ADA)  and Rehabilitation Act by failing to provide medically necessary services in the most integrated setting.

The common questions of fact and law predominate over questions affecting only individual class members.

17.  The Plaintiff's claims are typical of the class members' claims.  As a result of the Defendant's policies, practices and procedures, the Plaintiff and class members are not provided with medically necessary home and community-based services to treat or ameliorate their behavioral or emotional disorders; and are or have been segregated, or are at risk of segregation, due to Defendant's failure to provide medically necessary and legally mandated services.

18.  The Plaintiff is an adequate representative of the class because he suffers from deprivations identical to those of the class members and has been denied the same federal rights that he seeks to enforce on behalf of the other class members.  The Plaintiff will fairly and adequately represent the interests of the other class members, many of whom are unable to

9

pursue claims on their own behalf as the result of their disabilities. Plaintiff's interest in obtaining injunctive relief for the violations of constitutional rights and privileges is consistent with and not antagonistic to those of any person within the class. Plaintiff's counsel are qualified, experienced and able to conduct the proposed litigation.

19.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

> (i) A multiplicity of suits with consequent burden on the courts and defendants should be avoided.

> (ii) It would be virtually impossible for all class members to intervene as parties-plaintiffs in this action.

20.  The Defendant has acted or refused to act on grounds applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## V.  CONSTITUTIONAL AND STATUTORY BACKGROUND

### A.  The Federal Medicaid Program / EPSDT

21.  Medical Assistance, commonly known as Medicaid, is a joint federal and state funded program enacted to provide necessary medical assistance to needy aged or disabled persons and families with dependent children, whose income and resources are insufficient to meet the cost of care.  42 U.S.C. Sec. 1396.  States choosing to participate in the Medicaid program must operate the program in conformity with federal statutory and regulatory requirements.  42 U.S.C. Sec. 1396a.

22.  Each State participating in the Medicaid program must submit a Medicaid plan to the Secretary of Health and Human Services (HHS) for approval. The State plan describes the

10

administration of the program and identifies the services the State will provide to eligible beneficiaries. 42 U.S.C. Sec. 1396.

23. Each State must designate a single state agency to administer and / or supervise the administration of the state's Medicaid plan. 42 U.S.C. Sec. 1396a(a)(5).

24. In Illinois, the Department of Healthcare and Family Services (HFS) is the single state agency responsible for administering the Medicaid program.

25. Federal law requires States to fully implement the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) program of Medicaid. 42 U.S.C. Sec. 1396a(a)(43); 43 U.S.C. Sec. 1396d(a)(4)(B); 42 U.S.C. Sec. 1396d(r). The purpose of the ESPDT program is to ascertain children's physical and mental health conditions and ensure children receive needed services "to correct or ameliorate defects and physical and mental illnesses and conditions . . ." 42 U.S.C. Sec. 1396d(r)(5). Under EPSDT, States are required to provide screening services to identify health and mental health conditions and illness. 42 U.S.C. Sec. 1396d(r)(1). States must also provide needed diagnostic and treatment services to correct or ameliorate health or mental health conditions. 42 U.S.C. Sec. 1396a(a)(43)(C); 42 U.S.C. Sec. 1396d(r)(5). Needed services must be provided whether or not such services are included in the state plan. 42 U.S.C. Sec. 1396d(r)(5); 42 C.F.R. Sec. 441.56(c).

26. EPSDT requires the State of Illinois to provide or arrange for the provision of covered EPSDT services. Subsection (B) of 42 U.S.C. Sec. 1396a(a)(43) states that a state plan must "provide for . . . providing or arranging for the provision of such screening services in all cases where they are requested[.]" 42 U.S.C. Sec. 1396a(a)(43)(B). Subsection (C) states that a state plan for medical assistance must "provide for . . . arranging for (directly or through referral

11

to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services." 42 U.S.C. Sec. 1396a(a)(43)(C). The ESPDT provisions obligates the State of Illinois to ensure that medically necessary services are available, accessible and provided, either by providing them directly or by arranging for them through "appropriate agencies, organizations, or individuals[.]" 42 U.S.C. Sec. 1396a(a)(43).

27. The State of Illinois has an obligation to ensure that all services required by the ESPDT provisions are being provided to Medicaid-eligible children effectively.

28. Illinois has chosen to participate in the Medicaid program; and therefore must provide EPSDT services to eligible children under the age of 21.

29. For children with significant emotional and behavioral disorders, intensive home and community-based services are medically necessary to treat and ameliorate their disorders.

30. Intensive home and community-based services include, but are not limited to, crisis intervention, case coordination, psychiatric consultation, individual therapy, group therapy, family therapy, milieu therapy services, therapeutic stabilization services and behavior management intervention services. In some cases, intensive residential treatment services are required due to individuals exhibiting high levels of aggression and self-destructive behavior, requiring intensive behavioral intervention in a 24 hour, seven days a week continuum of care.

31. The State of Illinois does not make intensive home and community-based services available on a consistent, statewide basis for children for whom the services are medically necessary. In March, 2010, the State of Illinois through DHS acknowledged that of the identified 18,134 children and adolescents through the age of 21 with severe mental illnesses and severe emotional disturbances, only 220 of these children received intensive community-based

12

services.   In May, 2011, the State of Illinois through the Division of Developmental Disabilities

that the "PUNS" list or "Waiting List" for services, reported that there were 2,123 children

waiting for funding for services who either had an emergency or critical need for services due to

their serious health or behavioral issues.

### B.   The Americans with Disabilities Act and Section 504 of the Rehabilitation Act

32.   Title II of the Americans with Disabilities Act prohibits public entities from

discriminating against or excluding a qualified individual with a disability from participating in

the benefits of services, programs, or activities of the public entity on the basis of disability, 42

U.S.C. Sec. 12132; 28 C.F.R. Sec. 35.130.

33.   The ADA requires public entities to administer services, programs, and activities in

the most integrated setting appropriate to the needs of qualified individuals with disabilities.   28

C.F.R. Sec. 35,130(d).

34.   Public entities also must make reasonable modifications in policies, practices, or

procedures when necessary to avoid discrimination on the basis of disability, unless the public

entity can demonstrate that the modifications would fundamentally alter the nature of the service,

program, or activity.   28 C.F.R. Sec. 35.130(b)(7).

35.   Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, imposes identical

requirements on State programs and activities that receive federal financial assistance.

36.   The Defendant discriminates against the named Plaintiffs and the Class by failing to

provide them services in the most integrated setting appropriate to their needs.   An integrated

setting is one that allows individuals to live in their home or a home-like setting with natural

family supports and the opportunity to attend school and participate in their communities with

non-disabled peers. The Defendant offers only a negligible amount of intensive home and community-based services to services to some children and not all children and have chosen instead to serve children in needlessly segregated settings.

37. Hospitals and psychiatric residential treatment facilities are all restrictive settings that severely limit a child from interacting with his or her family, school, peers and community. Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections. By failing to provide adequate home based and community-based mental health / behavioral services, the Defendant has and continues to discriminate against the Plaintiffs and the Class by unnecessarily segregating them in violation of the ADA and Section 504 of the Rehabilitation Act.

## V.   STATEMENT OF FACTS

### A.   Plaintiff N. B.

38. The Plaintiff, N.B. is a fourteen year old boy who since June, 2009 has experienced approximately fourteen (14) placements in the psychiatric hospital, Streamwood Behavioral Hospital. When N.B. is hospitalized, he stays an average of three weeks and is placed on the Autistic Unit and has 1:1 observation at all times.

39. N.B. has a diagnosis of Autism Spectrum Disorder, Intermittent Explosive Disorder, Mood Disorder NOS, Disruptive Behavior Disorder NOS, and Moderate to Severe Mental Retardation. N.B. has a significant history of maladaptive and self-injurious behaviors, including hitting himself in the head, scratching himself and biting his hand. N.B. is extremely aggressive. N.B. is non verbal.

40. After N.B. has been discharged from the hospital, the family and outpatient services

14

have been unsuccessful at maintaining a sufficiently supervised and therapeutic setting.

41.  N.B. needs a residential treatment facility to correct or ameliorate his mental and behavioral conditions.  N.B. needs a residential treatment facility for the maximum reduction of his mental disability and for the restoration of him to the best possible functional level.  N.B. needs a residential treatment facility to correct or ameliorate his mental disability.

42.  Dr. Peter Nichols has recommended that N.B. receive residential treatment.

43.  Dr. Joseph McNally has recommended that N.B. obtain psychiatric services along the spectrum of high end residential care.

44.  The Defendant has refused to arrange and provide funding for N.B. for residential treatment and a behavioral modification plan.

45.  Without N.B. receiving the necessary intensive residential services, he will likely be at risk for many more hospitalizations.

46.  N.B. is an individual with a disability.

47.  N.B. is a recipient of Medical Assistance, commonly known as Medicaid.

48.  N.B. brings this action through his mother and next friend, Angeline Buchanan.

49.  N.B. has repeatedly physically attacked his mother and grandmother.  N.B. has destroyed items in the home and twice almost burned down the family residence.  N.B. has also been self-injurious, scratching, biting, punching self and punching walls.

50.  N.B. has never received intensive home based and community-based services.

51.  N.B. has a medical need for intensive home based and community-based services.

52.  The State of Illinois denied N.B. funding for an Individual Care Grant despite the fact that the State's psychiatrist acknowledged that N.B. was a child with autistic disorder, mood

15

disorder, N.O.S. (not otherwise specified) and intermittent explosive disorder, extremely

aggressive and non-verbal.

53.  The State of Illinois denied N.B. funding for an Individual Care Grant because the

criteria for an ICG requires that N.B. satisfy the criteria of severely impaired reality testing.

54.  It is medically necessary for N.B to receive intensive home based and community-

based services to avoid institutionalization.

55.  N.B. will not receive intensive home based and community-based services upon

discharge from Streamwood Behavioral Center or any similar hospital or psychiatric facility.

56.  N.B.'s community mental health center does not offer intensive home based and

community-based services.

## VII.   CAUSES Of ACTION

### COUNT I

**VIOLATION OF THE EARLY AND PERIODIC SCREENING, DIAGNOSTIC
AND TREATMENT (EPSDT) PROGRAM OF MEDICAID
AND 42 U.S.C SECTION 1983**

57.  The Plaintiff repeats and incorporates by reference as though fully set forth here the

facts contained in paragraphs 1 through 56 above.

58.  In violation of the EPSDT provisions of the Medicaid Act, the Defendant, while

acting under the color of law, has failed to provide the Plaintiff and Class with medically

necessary intensive home and community based services when such services are medically

necessary to treat or ameliorate their conditions.  42 U.S.C. Sec. 1396a(a)(43), Sec. 1396d(r).

59.  The Defendant's failure to provide statutorily-mandated health services violates 42

U.S.C. Sec. 1983 by depriving the Plaintiff and the Class of their statutory rights under the

Medicaid Act to receive medically necessary services.

## COUNT II

### VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA)
### AND 42 U.S.C SECTION 1983

60. The Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 59 above.

61. Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. Sec. 42 U.S.C. Sec. 12132. A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. Sec. 35.130(d) (1998). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the ADA. 62. Children with behavioral or emotional disorders are qualified individuals with disabilities within the meaning of the ADA.

63. The Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA.

64. The Illinois Department of Healthcare and Family Services of which Defendant Hamos is Director is a "public entity" within the meaning of Title II of the ADA.

65. The actions by HFS constitute unlawful discrimination under 42 U.S.C. Sec. 12132 and violate the integration mandate of the regulations implementing this statutory prohibitions. 28 C.F.R. Sec. 35.130(d).

66. The Defendant discriminates against the Plaintiff and the Class by failing to provide

them services in the most integrated setting appropriate to their needs.  An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and the opportunity to attend school and participate in their communities with non-disabled peers.  The Defendant offers only a negligible amount of intensive home and community-based services to some children and not all children and have chosen instead to serve children in needlessly segregated settings.

67.  Hospitals and  psychiatric residential treatment facilities are all restrictive settings that severely limit a child from interacting with his or her family, school, peers and community.  Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections.  By failing to provide adequate home based and community-based mental health / behavioral services, the Defendant has and continues to discriminate against the Plaintiff and the Class by unnecessarily segregating them in violation of the ADA.

68.  The Plaintiff and putative class have no adequate remedy at law.

69.  The Plaintiff is indigent and unable to post bond.

## COUNT III

### VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983
### (DECLARATORY AND INJUNCTIVE RELIEF)

70.  The Plaintiff repeats and incorporate by reference as though fully set forth here the facts contained in paragraphs 1 through 69 above.

71. The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. The implementing regulation for the statute requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." 28 C.F.R. Section 41.51(d). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the RA.

72. The Illinois Department of Healthcare and Family Services is a recipients of federal funds under the Rehabilitation Act.

73. Children with behavioral or emotional disorders are otherwise qualified individuals with a disability within the meaning of the Rehabilitation Act.

74. The Plaintiffs is a qualified individuals with a disability under Section 504 of the Rehabilitation Act.

75. The actions by HFS constitute unlawful discrimination under 29 U.S.C. Sec. 794(a) and violate the integration mandate of the regulations implementing this statutory prohibition. 28 C.F.R. Sec. 41.51(d).

76. The Defendant discriminates against the Plaintiff and the Class by failing to provide them services in the most integrated setting appropriate to their needs. An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and the opportunity to attend school and participate in their communities with non-disabled peers. The Defendant offers only a negligible amount of intensive home and community-based services to some children and not all children and have chosen instead to serve

19

children in needlessly segregated settings.

77. Hospitals and psychiatric residential treatment facilities are all restrictive settings that severely limit a child from interacting with his or her family, school, peers and community. Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections. By failing to provide adequate home based and community-based mental health / behavioral services, the Defendant has and continues to discriminate against the Plaintiff and the Class by unnecessarily segregating them in violation of the Rehabilitation Act.

78. The Plaintiff and putative class have no adequate remedy at law.

79. The Plaintiff is indigent and unable to post bond.

80. The Plaintiff seeks declaratory and injunctive relief, individually and on behalf of the Class to redress the Defendant's violation of the Rehabilitation Act.

## COUNT IV

### VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983
### (MONETARY DAMAGES)

81. The Plaintiff repeats and incorporate by reference as though fully set forth here the facts contained in paragraphs 1 through 80 above.

82. The Defendant has intentionally discriminated against the Plaintiff by establishing a system which requires him to become institutionalized (hospitalized) in order to receive or access intensive services to address his behavioral or emotional disorders, while other persons are able to access community based services without having to become institutionalized.

83. The Defendant has been "deliberately indifferent" to the need for community based

20

services for the Plaintiff.  Despite the demonstrated advantages of community-based programs, Defendant administer an antiquated system for serving people with behavioral or emotional disorders that relies heavily on hospitalizations in order to receive intensive services.

84.  The Defendant has been deliberately indifferent to the Plaintiff by failing to provide a reasonable modification or accommodation to the existing institutional funding for behavioral or emotional disorder services in order for the Plaintiff to receiving funding for community based services.

85.  It would not fundamentally alter the Defendant's programs, services, or activities to provide the Plaintiff with funding for services in the community.

86.  Providing institutional care to the Plaintiff in a hospital would be more costly than providing community-based funding to the Plaintiff in a residential setting.

87.  As a direct and proximate result of the Defendant's policies, practices and procedures, the Plaintiff has been denied community based services which has caused emotional distress / mental anguish to him and resulted in additional hospitalizations.

88.  As a result of the acts and omissions of the Defendant, the Plaintiff has suffered and will suffer and continue to suffer mental and emotional deprivation, including but not limited to the aggravation of existing mental and emotional conditions.

89.  As a result of the acts and omissions of the Defendant, the Plaintiff has suffered and will suffer and continue to suffer physical, mental and emotional deprivation, including but not limited to the  loss of opportunities to develop to his fullest potential, and aggravation of his existing physical, mental and emotional conditions.  The Plaintiff will continue to suffer such deprivations in the future absent relief from this Court.

21

90.   The Plaintiff seeks monetary damages, individually and not on behalf of the Class, to redress the Defendant's violation of the Rehabilitation Act.

## VII.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court:

(a)  Certify this case to proceed as a class action.

(b) Issue a Declaratory Judgment in favor of the Plaintiff and the Class and declare unlawful the Defendant's failure to comply with the mandates of the Medicaid Act, the Americans with Disabilities Act and the Rehabilitation Act.

(c) Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from subjecting the Plaintiff and the Class to practices that violates their rights under the Medicaid Act, the Americans with Disabilities Act and the Rehabilitation Act.

(d) Award monetary damages to the Plaintiff under the Rehabilitation Act.

(e) Award Plaintiff and the Class the costs of this action, including reasonable attorneys fees, and

(f) Award such other relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Robert H. Farley, Jr.*
One of the Attorneys for
  the Plaintiffs

Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.

22

1155 S. Washington Street
Naperville, IL 60540
630-369-0103
farleylaw@aol.com


Michelle N. Schneiderheinze
2401 E. Washington Street
Suite 300C
Bloomington, IL 61704
309-533-7340
michelle@mnslawoffice.com


Mary Denise Cahill
Cahill & Associates
1155 S. Washington Street
Naperville, IL 60540
630-778-6500
mdcahill@sbcglobal.net