**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| N.B., *et al.,* by and through their next friends, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11 C 06866 |
| | ) | |
| JULIE HAMOS, in her official capacity as | ) | Judge John J. Tharp, Jr. |
| Director of the Illinois Department of | ) | |
| Healthcare and Family Services, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Nine children with mental or behavioral disorders, through their guardians, bring this suit as a putative class action against the director of the Illinois Department of Healthcare and Family Services ("Department" or "HFS"). The four-count complaint alleges violations of the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act, 42 U.S.C §§ 1396a(a)(43), 1396d(r) and Title II of the Americans with Disabilities Act ("Title II" or "ADA"), 42 U.S.C. § 12132, and the parallel provision of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504" or "RA"). The plaintiffs claim that HFS's violation of rights secured by these federal laws entitles them to relief under 42 U.S.C. § 1983. The plaintiffs claim that HFS violates their rights by failing to provide medically necessary treatment—specifically, home or community-based (in or out-patient) mental health and behavioral services—in the most integrated setting appropriate to their needs. The plaintiffs seek declaratory and injunctive relief that would require HFS to implement appropriate screening and treatment alternatives to the

acute care provided in general and psychiatric hospitals.[1] One of the plaintiffs, N.B., also seeks monetary damages on his own behalf under the Rehabilitation Act.[2]

Although the defendant previously elected to answer the plaintiffs' claims, this time she moves to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The second amended complaint does not set forth any new claims, but it adds four plaintiffs and some additional factual allegations to address concerns expressed in the opinion on class certification of the prior district judge assigned to this case. *See* Mem. Op. & Order, Dkt. # 45 (Pallmeyer, J.). For the reasons set forth below, the defendant's motion is denied.

## REGULATORY BACKGROUND

Through the Medicaid program, the federal government and the states provide medical assistance to needy aged or disabled persons and to families with dependent children whose income and resources are insufficient to cover the cost of care. *See* 42 U.S.C. § 1396. A state's participation in the Medicaid program is optional, but states choosing to participate must operate the program in conformity with federal statutory and regulatory requirements. *See id.* § 1396a; *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). Some types of medical assistance covered by Medicaid are optional (*e.g.*, dental services—*see Bontrager v. Indiana Family and Social Servs. Admin.*, 697 F.3d 604, 605 (7th Cir. 2012))—while others (like the EPSDT program) are not. *See generally* 42 U.S.C. § 1396a(a)(10)(A) (identifying medical assistance services that

---

[1] The claims for prospective declaratory and injunctive relief against the Director in her official capacity are not barred by the Eleventh Amendment. *See Ex Parte Young,* 209 U.S. 123, 159-60 (1908); *Council 31 of AFSCME, AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012).

[2] The damages claim against the Director in her official capacity is permitted because § 504 of the Rehabilitation Act applies only to state activities that receive financial assistance from the federal government; "a state's decision to accept such assistance is a decision to waive its Eleventh Amendment immunity." *Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

must be provided in state plans). Each state participating in the Medicaid program must submit for approval to the U.S. Secretary of Health and Human Services ("HHS") a plan setting forth the services that the state will provide in its Medicaid program ("state plan"). *Radaszewski v. Maram*, 383 F.3d 599, 601 (7th Cir. 2004). Illinois participates in Medicaid, and HFS administers the state's program pursuant to the requirement that states designate a single agency for that purpose. *See* 42 U.S.C. § 1396a(a).

EPDST is a Medicaid program providing comprehensive and preventive healthcare services for children under age twenty-one who are eligible for Medicaid. *See id.* § 1396d(r). Among other things, EPSDT requires the availability of screening services that provide "a comprehensive health and developmental history (including assessment of both physical and mental health development)." *Id.* § 1396d(r)(1)(B)(i). A state Medicaid plan must provide or arrange for providing "such screening services in all cases where they are requested." *Id.* § 1396a(a)(43)(B). The state plan must also arrange for, directly or by referral, "corrective treatment the need for which is disclosed by such child health screening services." *Id.* § 1396a(a)(43)(C). Further, a state must provide "necessary health care, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illness and conditions discovered by the screening services, whether or not such services are covered under the State plan." *Id.* § 1396d(r)(5).

State plans may cover part or all of the cost of home and community-based services in cases where, but for the provision of such services, the individuals would require the level of care provided in a hospital, nursing home, or intermediate care facility for the mentally retarded. 42 U.S.C. § 1396n(c)(1). States may, however, obtain waivers from the federal government for the provision of home and community-based services as "medical assistance" under the state

plan. *Id.* § 1396n(c).[3] Under such waivers, services can be provided to individuals to help them avoid institutionalization, without being subject the usual statutory requirements, including statewide availability, comparability, and income eligibility. *Id.*; 42 C.F.R. § 441.300.

## DISCUSSION

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Put another way, the complaint must give the defendant "fair notice" of the claim and the grounds supporting it. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). To avoid dismissal, a complaint must state a claim for relief that is "plausible on its face"—a standard requiring more than a "sheer possibility" that the defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570). A complaint must suggest that the plaintiff has a right to relief, providing allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Further, a court takes all of the well-pleaded allegations as true and construes them in a light most favorable to the plaintiff. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

The Department moves to dismiss the complaint, arguing that the plaintiffs fail to identify any "right" secured by federal law that the Department is violating, as required to state a claim under § 1983, and further contending that, as a matter of law, the ADA and the Rehabilitation Act do not require it to create new programs to provide integrated services. In response, the plaintiffs contend that the EPSDT program and the ADA and Rehabilitation Act, including their implementing regulations, establish an individually enforceable right of access to appropriate

---

[3] A list of current home and community-based services (HCBS) waiver programs in Illinois can be found online at http://www2.illinois.gov/hfs/MedicalPrograms/HCBS/Pages/default.aspx.

care for mental and behavioral disorders in the most integrated setting. The Court notes that in two cases presenting nearly identical claims by individual plaintiffs, Judge Myerscough in the Central District of Illinois rejected the defendant's motion to dismiss ADA and Rehabilitation Act claims. *See J.T. ex rel. A.F. v. Hamos*, No. 12 C 3203, 2012 WL 4760645 (C.D. Ill. Oct. 5, 2012); *S.B. ex rel. W.B. v. Hamos*, No. 12 C 03077, 2012 WL 4740291 (C.D. Ill. Oct. 3, 2012).[4]

### I.    Rights Under Medicaid's EPSDT Program

In Count I, the plaintiffs allege that the Department violated their rights under the EPSDT provisions of Medicaid, 42 U.S.C. §§ 1396a(a)(43), 1396d(r), by failing to provide statutorily mandated services. 2d Am. Compl. ¶ 201. The defendants contend that nothing in the EPDST provisions can be read to create a federal right enforceable through § 1983.

Section 1983 creates a federal remedy against anyone who, under color of state law, deprives "any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see Maine v. Thiboutot*, 448 U.S. 1 (1980) (recognizing the availability of suits to enforce individual rights under the Social Security Act). The Supreme Court has set out three factors for courts to consider in determining whether a statute creates enforceable rights: "'(1) Congress must have intended that the provision in question benefit the plaintiff'; (2) the asserted right must not be 'so vague and amorphous that its enforcement would strain judicial competence'; and (3) 'the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.'" *Planned Parenthood of Ind., Inc. v. Commissioner of Ind. State Dep't of Health*, 699 F.3d 962, 972–73 (7th Cir. 2012) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). A statute that satisfies these factors is presumptively enforceable through § 1983, *Blessing*, 520 U.S. at 341, but nothing

---

[4] In the cases before Judge Myerscough, the Department did not move to dismiss the Medicaid EPSDT claims.

"short of an unambiguously conferred right [will] support a cause of action brought under § 1983." *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).

The defendant correctly points out that under the framework of *Blessing* and *Gonzaga*, a complaint must allege a violation of a federal *right*, not merely of federal law. Mem., Dkt. # 58 at 3. *Gonzaga* clarified that a cause of action under § 1983 must be supported by an "unambiguously conferred right," and not broader, vaguer "benefits" or "interests." 536 U.S. at 283. The Department therefore contends that Count I is deficient as a matter of pleading because the plaintiffs have alleged "only that Defendant violated the law; not that they have been denied Congressionally-created federal rights." Mem., Dkt. # 58 at 10. The complaint states, however, that the plaintiffs seek to enforce their "rights . . . under the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of . . . the Social Security Act," and that by failing to provide "medically necessary intensive home and community based services," the defendant has deprived them of their statutory "rights." 2d Am. Compl. ¶¶ 8, 200–201. Although Medicaid does not expressly provide for a private right of action, the Seventh Circuit has recognized that certain of its provisions may be enforced through § 1983. *Bontrager v. Ind. Family & Soc. Servs. Admin.*, 697 F.3d 604, 607 (7th Cir. 2012) (holding that there is a private right to enforce § 1396a(a)(10)(A), which mandates that state medical assistance programs provide certain care and services—there, medically necessary dental procedures); *see Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 456–57 (7th Cir. 2007) (collecting cases and assuming a private right to enforce Medicaid § 1396a(a)(8)). The defendants do not distinguish EPSDT program from the Medicaid provisions that the Seventh Circuit has found to be enforceable through § 1983 and the Court notes that § 1396a(a)(8), at issue in *Bontrager,* is part of the same

statutory subsection as § 1396a(a)(43), the primary EPSDT provision; both are enumerations of what a "State plan for medical assistance *must provide*."

The Department fails to clearly identify the three *Blessing* factors in its argument that the EPSDT provisions are not enforceable, simply arguing instead that Congress did not intend to create individually enforceable rights when it created the EPDST program. In *Memisovski ex rel. Memisovski v. Patla*, the defendants argued that these same provisions do not confer rights, yet they failed to make an argument incorporating the three-factor test outlined in *Blessing*. No. 92 C 1982, 2001 WL 1249615, at *5 (N.D. Ill. Oct. 17, 2001). The court wasted little time in denying the defendant's motion to dismiss in this respect, noting that it was "unable to locate any cases finding that the EPSDT provisions did not satisfy all elements of the three-part inquiry." *Id.* More recently, the Seventh Circuit held that 42 U.S.C. § 1396a(a)(10)(A), the Medicaid provision requiring states to provide medical assistance to all eligible individuals, was enforceable through § 1983. *Bontrager*, 697 F.3d at 607. The defendant attempts to distinguish *Bontrager* by arguing that, unlike the plaintiff in that case, the plaintiffs here seek "programmatic" relief. Def.'s Mem. Supp. Mot. Dismiss 4–5. As discussed further below, this argument is unavailing.

Application of all three *Blessing* factors persuades the Court that the EPSDT provisions are enforceable as private rights through § 1983. First, the plaintiffs are intended beneficiaries of the program. *See Blessing*, 520 U.S. at 340. The complaint sufficiently alleges that the plaintiffs are "persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B)," including

the "early and periodic screening, diagnostic, and treatment services" defined in § 1396d(r).[5]

"The statute requires that participating states provide such care and services '*to all individuals*' who meet the plan eligibility requirements and are under the age of twenty-one." *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 603 (5th Cir. 2004). Second, there is nothing about the EPSDT program that is "so vague and amorphous that its enforcement would strain judicial competence." *See Blessing*, 520 U.S. at 340-41. The statute sets forth four requirements; states must(i) "inform[]" the eligible minors of the availability of EPSDT services; (ii) "provid[e] or arrang[e] for screening services when they are requested; (iii) "arrang[e] for corrective treatment"; and (iv) "report[] to the Secretary" certain statistics." It might not be easy for a state to comply with these requirements, but they are not "vague and amorphous.". Third, the statute uses "mandatory, rather than precatory, terms." *See Blessing*, 520 U.S. at 341. As stated, the

---

[5] Whether the appropriate doctor made the required "determination" is a factual issue that must be resolved in the plaintiffs' favor at this point. As the defendant points out, under 42 U.S.C. § 1396a(a)(43)(C), the minor's "need" for services must be established in a healthcare professional's screening. Def.'s Mem. Supp. Mot. Dismiss 8; *see* 89 Ill. Admin. Code § 140.485. Under the Illinois EPSDT program, screenings are conducted by a Medicaid recipient's Primary Care Provider (PCP). *Healthy Kids*, Illinois Health Connect, https://www.illinoishealthconnect.com/clients/healthykids.aspx. The plaintiffs have alleged that they each have a medical need for home and community-based services, and that the defendant has denied them such services. In addition, the plaintiffs have each alleged an immediate risk of institutionalization, evidenced by prior placements in psychiatric hospitals for lack of alternatives. *See Capehart v. Terrell*, 695 F.3d 681 (7th Cir. 2012) (plaintiff seeking an injunction under § 1983 was required to show an "immediate[] . . . danger of sustaining some direct injury"). *Id.* at 684. The parties will have an opportunity to develop the facts surrounding the plaintiffs' demonstration of medical need. But at this stage of the proceeding, this Court finds that complaint sufficiently alleges that the plaintiffs have a medical need for services. Finally, the Court notes that the defendant's suggestion (Mem., Dkt. # 58 at 9 n.1) that this alleged factual deficiency implicates the Court's subject matter jurisdiction confuses the merits and jurisdictional inquiries. *See generally Bovee v. Broom*, 732 F.3d 743, 744 (7th Cir. 2013) ("If failure on the merits equated to a lack of jurisdiction, only plaintiffs could get effective judgments."). If it turns out that the plaintiffs have not complied with statutory prerequisites to obtain the services they seek, their claim will fail, but that does not mean that the Court lacks jurisdiction to hear the claim, which arises under federal law and therefore satisfies the requirements of 28 U.S.C. § 1331.

EPSDT services are listed as an element that a state assistance program "*must* provide for." 42 U.S.C. § 1396a(a)(43).

Many other courts have concluded that various EPSDT requirements are enforceable under § 1983. *See, e.g., S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 602–06 (5th Cir. 2004) (EPSDT provision, 42 U.S.C. § 1396a(a)(10)(A), satisfies all of the *Blessing* factors post-*Gonzaga*); *Westside Mothers v. Haveman*, 289 F.3d 852, 863 (6th Cir. 2002) (Medicaid-eligible children are the intended beneficiaries of EPSDT; the services must be provided to them; and the provisions are not too vague or amorphous, as they are listed in the statute); *Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Servs.*, 293 F.3d 472, 478–79 (8th Cir. 2002) (recipients had federal right to EPSDT services, enforceable through § 1983); *Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 268–71 (D.D.C. 2010) (section 1396a(a)(43) "unambiguously" confers a private right enforceable under *Gonazaga*); *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 52 (D. Mass. 2006) (plaintiffs properly invoked § 1983 and proved violation of EPSDT); *see also Miller by Miller v. Whitburn*, 10 F.3d 1315, 1319 (7th Cir. 1993) (EPSDT services satisfied pre-*Blessing* and *Gonzaga* framework for § 1983 claims). The Court agrees with the weight of authority.

Defendant cites no authority to the contrary. Instead, in an effort to demonstrate that Congress did not intend to create the "right" plaintiffs allege, the Department characterizes the relief that plaintiffs seek as "programmatic," obligating the State to "create" or "devise" a new "program" for the provision of mental health services—a remedy that defendant suggests is inconsistent with the statutory language. Mem., Dkt. # 58 at 9–10. Relying on *Collins v. Hamilton*, 349 F.3d 371 (7th Cir. 2003), the Department maintains that EPSDT is a "service," not a "program," and that the Seventh Circuit "chose its words carefully" because Congress did

not intend for states to have programs in place for the provision of mental and behavioral health services. This is a semantic distinction that bears no weight; the Department does not identify criteria that distinguish a "program" from a "service" other than to suggest that if many people are entitled to the services that the plaintiffs are seeking, that relief requires the creation of a "program." That widespread relief may be warranted, however, does not exempt the Department from compliance with statutory requirements; individual rights conferred by the statute are not forfeited simply because compliance may require, or be facilitated by, "systemic" or "programmatic" changes to the Department's administration of the Medicaid program.[6]

In any event *Collins* does not support the Department's argument. In *Collins*, two children who had been diagnosed with various mental illnesses filed a class action suit under § 1983 against Indiana state officials, alleging violations of the EPSDT provisions and seeking Medicaid coverage for treatment in psychiatric residential treatment facilities (PRTFs). 349 F.3d at 372. The district court found that placement in PRTFs qualifies as "medical assistance" that was necessary to "correct or ameliorate" the patients' psychiatric conditions under EPSDT and granted summary judgment in favor of the plaintiffs. *Id.* The Seventh Circuit affirmed the district court's grant of an injunction that prevented Indiana from denying coverage of PRTFs for any Medicaid-eligible individual under the age of twenty-one when such treatment is found to be medically necessary. *Id.* The court found that PRTFs fall within the definition of "inpatient

---

[6] The Department's argument also confuses the question of the validity of the individual plaintiffs' claims with the scope of the relief sought by the putative class. The individual plaintiffs do not eschew individual relief in favor of class relief; they seek both. *See, e.g.*, SAC ¶ 6 ("The Plaintiffs, individually and on behalf of the Class, seeks [sic] prospective injunctive relief…"); Request for Relief, subparagraphs (b) and (c) (seeking declaratory and injunctive relief "in favor of the Plaintiffs and the Class"). The Department's concerns relate, if to anything, the scope of declaratory and injunctive relief beyond the claims of the individual defendants; that question has no bearing on whether the individual plaintiffs have stated a viable claim that they are entitled to residential and/or in-home mental health and behavioral services under EPSDT.

psychiatric hospitals" under 42 U.S.C. § 1396d(a)(16). *Id.* at 375. Contrary to the defendant's argument in this case, the *Collins* court used the words "program" and "service" interchangeably when referring to the EPSDT provisions of Medicaid. *Id.* at 372, 374. Further, the distinction that the defendant attempts to draw between these terms played no role whatsoever in the court's analysis, nor is it relevant in determining congressional intent, since the statute does not speak to such a distinction. *Collins,* which held that the EPSDT requirements mandate the provision of medically indicated treatment in residential treatment facilities, supports the plaintiffs interpretation of the statutory language at issue here. In any event that language itself is the best evidence of Congress's intent, and, as discussed further below, the statute mandates the EPSDT services that the plaintiffs are suing to obtain.

The defendant also argues EPSDT cannot be the source of the plaintiffs' alleged rights because the requested "home and community-based services" are not within the ambit of 42 U.S.C. § 1396a(a), which sets forth the required contents of state plans. Mem., Dkt. # 58 at 7. That is simply not so. Section 1396a(a)(43), which requires state plans to provide EPSDT services, does not exclude home and community-based services; to the contrary, it requires, without limitation, state plans for medical assistance to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services." *See* 42 U.S.C. § 1396a(a)(43)(C). Similarly, subsection (r) of § 1396d defines EPSDT services to include (in addition to screening, vision, dental, and hearing services), any other Medicaid service listed in § 1396d(a) that is needed to "correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5). And directly belying the Department's claim that home and community-based

programs are not within the ambit of "Medicaid services," section 1396d(a), which defines the services that qualify as "medical assistance" under Medicaid, also expressly lists a variety of healthcare services that may be provided in residential and in-home settings. *See, e.g.*, § 1396d(a)(7) ("home healthcare services"); § 1396d(a)(13) ("any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician . . . for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level").

Not surprisingly, then, other courts and the federal government have recognized, this language renders the states' EPSDT obligation extremely broad. *Parents' League for Effective Autism Servs. v. Jones-Kelley*, 339 Fed. App'x 542, 549 (6th Cir. 2009); *Katie A. ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1154 (9th Cir. 2007); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 593 (5th Cir. 2004); U.S. Dep't of Health & Human Servs., *Understanding Medicaid Home and Community Services: A Primer*, 10–11 (2000), http://aspe.hhs.gov/daltcp/reports/primer.pdf ("[T]he EPSDT component now covers the broadest possible array of Medicaid services, including personal care and other services provided in the home."). At the pleading stage, therefore, this Court cannot conclude that the services the plaintiffs seek access to—which are more intensive than the weekly counseling and medication management available in community wellness centers, but short of institutionalization—are unavailable as a matter of law.

For all of these reasons, the plaintiffs have a right to enforce under § 1983 the alleged violations of the EDSDT provisions in 42 U.S.C. §1396a(a)(43) and § 1396d(r).

## II. Rights Under the ADA and Rehabilitation Act

In Counts II and III, all plaintiffs seek injunctive and declaratory relief under the ADA and the Rehabilitation Act, and in Count IV, plaintiff N.B. also seeks money damages pursuant to the Rehabilitation Act. The plaintiffs state that they are qualified individuals with disabilities who are being denied public benefits and services. 2d Am. Compl. ¶¶ 204–207. They also claim that HFS's actions are in violation of the "integration mandate," which requires public entities to administer services, programs, and activities in the most integrated setting appropriate to the needs of disabled individuals. 2d Am. Compl. ¶ 207.

The defendant contends that neither the ADA nor the Rehabilitation Act creates a private right of action for these alleged violations. She argues that the claims are not for disparate impact, intentional discrimination, or failure to reasonably accommodate, which she says are the only three theories of liability under these statutes that have been recognized by the Seventh Circuit. Mem., Dkt. # 58 at 10. She further contends that "[n]o reading of the plain language of Title II of the ADA or Section 504 [of the Rehabilitation Act] supports a conclusion that either statute mandates public entities to affirmatively create and administer programs to deliver services in the most integrated setting appropriate to the needs of the disabled." *Id*. at 11.

Title II of the Americans with Disabilities Act provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. One of Title II's implementing regulations provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); *Radaszewski ex rel. Radaszewski v. Maram*,

13

383 F.3d 599, 607 (7th Cir. 2004). The "most integrated setting appropriate" is in turn defined as "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. A, p. 450.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), contains an antidiscrimination provision similar to the ADA's that applies to state programs and activities that receive federal funding. *See Radaszewski*, 383 F.3d at 607. The corresponding integration regulation also mandates that recipients administer their programs in the most integrated setting appropriate to the needs of qualified disabled individuals. *See* 28 C.F.R. § 41.51(d). In light of the similarities between the ADA and the Rehabilitation Act, courts must apply them in a consistent manner. *Radaszewski*, 383 F.3d at 607. In *Radaszewski*, the Seventh Circuit held that its analysis under the ADA applied with equal force to Rehabilitation Act claims. *Id.*

In arguing that the ADA and the Rehabilitation Act do not provide a basis for the plaintiffs' claims, the defendant concedes that the statutes provide remedies for individuals but argues that they do not impose a right to the kind of systemic or "programmatic" relief the plaintiffs purportedly seek. The defendant's concession is appropriate. It is settled that individuals may directly sue state officials for injunctive relief under the ADA. *Radaszewski,* 383 F.3d at 606. In *Olmstead v. L.C. ex rel. Zimring*, the Supreme Court held that states are obligated to provide community-based treatment to individuals with mental disabilities when "when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." 527 U.S. 581, 607 (1999). The Court centered its holding around the notion that "unjustified isolation . . . is properly regarded as discrimination based on disability." *Id.* at 597.

Because unjustified isolation is a form of "discrimination" against disabled individuals, and the plaintiffs allege that the state subjects them to unnecessary institutionalization, the defendant's argument that the plaintiffs fail to properly allege an appropriate theory of liability fails. The plaintiffs here have adequately placed the defendant on notice that they are claiming discrimination in the provision of mental health treatment for minors on Medicaid. They state that HFS's actions constitute "unlawful discrimination," that HFS "discriminates" against the plaintiff by failing to provide integrated services, and that HFS "has and continues to discriminate" by unnecessarily segregating the plaintiffs. 2d Am. Compl. ¶¶ 207–209. These allegations may, or may not, prove well-founded, but for purposes of this motion the Court must credit them and they suffice to plausibly set forth a claim for relief premised on the ADA's anti-discrimination provisions. Moreover, the plaintiffs invoke in their complaint 28 C.F.R. § 35.130(b)(7), which provides that public entities must make reasonable modifications to their practices in order to avoid discriminating on the basis of disability. 2d Am. Compl. ¶ 42. The Seventh Circuit has held, with respect to this Title II regulation, that "the duty to accommodate is an independent basis of liability under the ADA." *Wisconsin Community Services* 465 F.3d at 753. The reasonable modification theory of ADA liability might be an additional, or alternative, basis for the plaintiffs' claims.[7]

The Department next contends that the ADA and Rehabilitation Act, despite providing remedies for individual instances of discrimination, do not provide a generalized standard of care that creates a right to "programmatic" relief. This argument, and the Department's reliance on

---

[7] Plaintiffs are not required to plead theories of relief; they must simply put the defendant on notice of the factual basis for their claims. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010) (explaining that "plaintiffs in federal courts are not required to plead legal theories" and that "citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction").

*Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) echoes the defendants' analysis of the commonality and typicality requirements of class certification; they are a poor fit as an attack on the pleadings. The plaintiffs have made detailed allegations regarding their disabilities and the failure of the state to provide treatment except in the most acute cases, in the most restrictive settings. As noted above in discussing this argument in the context of the Medicaid EPSDT requirements, the "programmatic" nature of the plaintiffs' claims results from the state's alleged failure to provide access to home or community based services in most cases and its overuse of institutionalization system-wide, despite the integration mandate. To the extent they do seek to remedy "systemic" failures, the plaintiffs will have to pay heed to the discussion in *Jamie S.* regarding the need to show an illegal policy rather than merely alleging that each plaintiff suffered as a result of disparate violations of the integration mandate. *See* 668 F.3d at 497-98. But the defendant's "programmatic relief" argument does not undermine the viability of the plaintiffs' individual claims. They each allege discrimination as a result of specific failures to enforce the integration mandate, and that is enough to state a claim.

The defendant further argues that *Olmstead* is not a mandate to create new programs to administer home and community-based services. Mem., Dkt. #58 at 11. This argument rests on the premise that the plaintiffs seek new programs or services rather than a modification of the place and manner in which the State currently makes services available to the plaintiffs. Rejecting this analytical approach, the Ninth Circuit observed:

> If services were determined to constitute distinct programs based solely on the location in which they were provided, *Olmstead* and the integration regulation would be effectively gutted. States could avoid compliance with the ADA simply by characterizing services offered in one isolated location as a program distinct from the provision of the same services in an integrated location.

*Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003). The plaintiffs' desire for appropriate treatment in a non-hospital setting is not inherently a request for a new program; rather, it speaks to how and where services are available.

In any case, the Seventh Circuit has held that nothing in the ADA or regulations requires that the services being sought in an integrated community setting "already exist in exactly the same form in the institutional setting." *Radaszewski*, 383 F.3d at 611. If differences in service delivery were enough to defeat a claim seeking community-based care, "then the integration mandate of the ADA and the Rehabilitation Act would mean very little." *Id.* States may be required to make reasonable modifications, unless they can demonstrate that doing so would "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see Olmstead*, 527 U.S. at 603; *Radaszewski*, 383 F.3d at 611.

With respect to the Rehabilitation Act claim, the defendant again argues that the state is not obligated to affirmatively create any programs, citing *Southeastern Community College v. Davis*, in which the Supreme Court stated that Section 504 does not impose an "affirmative-action obligation on all recipients of federal funds." 442 U.S. 397, 411 (1979). But *Davis* does not stand for the proposition that the Rehabilitation Act does not impose any "affirmative" obligations, as the defendant suggests. In *Alexander v. Choate*, the Court responded to severe criticism of this language from *Davis*, clarifying that "affirmative action" referred in context to fundamental alterations in a program or service, rather than the reasonable modifications they are obligated to provide. 469 U.S. 287, 300 n.20 (1985). The language does not provide a way to evade the RA's integration mandate, at least on the pleadings as a matter of law.

The Department further observes that, despite purporting to seek "integration," the plaintiffs appear to seek services including placement in a residential treatment facility, while

17

maintaining that psychiatric institutions and hospitals are restrictive settings. Mem., Dkt. # 58 at 13. Although it does appear that the plaintiffs and the defendant employ different, and possibly inconsistent, terminology to describe various types of treatment settings,[8] the pleadings put the Department on notice that the plaintiffs seek services in a setting more integrated and less isolated than a hospital or psychiatric institution, although residential and in-patient care in some form is within the ambit of the services they seek. *See J.T. ex rel. A.F. v. Hamos*, No. 12-cv-03203, 2012 WL 4760645, at *5 (C.D. Ill. Oct. 5, 2012); *S.B. ex rel. W.B. v. Hamos*, No. 12-CV-03077, 2012 WL 4740291, at *4 (C.D. Ill. Oct. 3, 2012). That is enough to state a claim for relief under the non-discrimination and integration provisions. The Court notes again, however, that variations in the type of relief sought and/or required by plaintiffs may be relevant to the certification of the putative class. *See Jamie S.,* 668 F.3d at 498-99.

Further to its arguments regarding the absence of a right under the ADA and the Rehabilitation Act, the Department contends that the regulations discussing the integration cannot be the source of any federal right enforceable through section 1983. The Department concedes that the regulations do in fact "appear to" create rights and causes of action, but contends that they are a nullity because regulations can only implement rights created by their authorizing statutes. The principle underlying the argument is sound. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). But, because this Court has already concluded that the relevant statutes mandate integration and provide an enforceable right, it need not dwell on this argument. The regulations implement the integration mandate set forth in the statutes.

---

[8] This dissonance was noted by Judge Pallmeyer as well. *See* Mem. Op., Dkt. # at 3 n.7.

The plaintiffs have stated claims for disability discrimination under the ADA and the Rehabilitation Act in Counts II and III. They allege that they are disabled and that the state failed to provide them with necessary treatment in an appropriate setting. The Department's concerns with "programmatic relief" are more properly directed at the class certification issues; for present purposes, because injunctive relief is permitted under the relevant statutes, the viability of the plaintiffs' claims are not undermined by the nature of the relief they request in the complaint. With regard to Count IV, plaintiff N.B.'s individual claim for monetary damages under the Rehabilitation Act, the defendant makes no separate argument as to why it should be dismissed, and therefore the Court does not address that count here.[9]

### III.    Class Claims

In a cursory argument (that purports, improperly, to incorporate the Department's brief in opposition to the motion for class certification), the Department contends that the claims for class-wide relief must be dismissed because the plaintiffs "merely seek[ ]to initiate a process through which highly individualized determinations of liability and remedy are made." These arguments are not directed at whether the allegations in the complaint provide sufficient notice of claims for relief that are plausible. As evidenced by the defendant's attempt to rest on arguments presented elsewhere, the argument relates to class certification and in particular, whether the issues to be decided are sufficiently common to the class members and whether the plaintiffs' claims are sufficiently typical. *See* Fed. R. Civ. P. 23(a). The Court will determine the appropriateness of class certification in due course, but the defendants' arguments do not supply a valid basis for dismissal pursuant to Rule 12(b)(6).

---

[9] The Court also does not address the Department's arguments that the claims of plaintiff S.B. must be dismissed because she has a claim pending in another court; the Department has now withdrawn this part of its motion upon the plaintiffs' representation that the S.B. in this case is not that same one who is a plaintiff in the Central District of Illinois.

***

For the reasons set forth above, the defendant's motion to dismiss [Dkt. # 57] is DENIED.

Date: December 5, 2013

John J. Tharp, Jr.
United States District Judge