**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| N.B., *et al.,* by and through their next friends, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 11 C 6866 |
| | ) | |
| v. | ) | Judge Alonso |
| | ) | |
| FELICIA NORWOOD, in her official capacity as Director of the Illinois Department of Healthcare and Family Services | ) ) ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

### A.

### INTRODUCTION AND FACTUAL BACKGROUND

The plaintiffs have filed a motion to enforce an unsigned "Draft Proposed Consent Decree" as a Settlement Agreement. [Dkt. #119]. The motion, which is effectively a request for a mandatory injunction, *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225 (7th Cir. 1993), has been referred here by Judge Alonso for a Report and Recommendation. (Dkt. ## 126, 127).

According to the motion, the plaintiffs and class members had agreed to a Proposed Consent Decree that was to be submitted to Judge Alonso for preliminary approval, but the defendant was now refusing to sign off on it. The plaintiffs' motion was four pages and cited only one case (which was from this court) and then, only for general propositions on contract formation.[1]

---

[1] The case was *Todd, Jr. v. Kohl's Dept. Store,* 2010 WL 3720265 (N.D. Ill. 2010), which was quoted as follows:

> Settlement agreements --- whether they are oral or written --- are contracts, and their construction and enforcement are thus governed by basic contract principles. (cites omitted).

(continued...)

It was not merely its brevity and perfunctory approach that made the brief unconvincing. It was the evidence on which the brief relied. The few minute orders, transcripts of status hearings, and emails that were cited in the brief as supposedly supporting its conclusion that the parties had acquiesced in the provisions of the proposed Consent Decree all showed that the document had not undergone final review by, and was not approved by the defendant, her staff or her counsel. *See,* [Dkt. #119, Exhs. A – G]. And, the issue of attorney's fees, which is often the *sine qua non* of class action litigation, *Eubank v. Pella Corp*, 753 F.3d 718, 720 (7th Cir. 2014), was unresolved, with the parties taking diametrically opposed positions on that pivotal question and with each unwilling to budge.

The evidence offered by the plaintiffs in support of their motion showed that settlement discussions began around mid-March of 2012. At that time, Judge Tharp continued a status hearing till May 14, 2014 "to permit the parties to explore settlement possibilities." (Minute Order, 3/13/14; Dkt. #119, Ex. B). Nine months later, as of December 2, 2014, "the parties [were] still working towards finalizing an agreed proposed consent decree." [Dkt. #97, Minute order of Judge Tharp]. On March 25, 2015, the parties informed Judge Alonso – to whom the case had been transferred – that they were still "trying...to finalize an agreement or a consent decree." [Dkt. #119, Ex. C, Transcript of proceedings]. Counsel for the defendant informed Judge Alonso that there was a new

---

[1](...continued)

\* \* \*

Furthermore, the material terms of the contract must be "definite and certain" so that a court can ascertain the parties' agreement. That said, Illinois courts have consistently held that an agreement may still be enforceable even though some terms may be missing or left to be agreed upon by the parties. (cites omitted).
[Dkt. #119 at 4] (parentheses and ellipsis in original).

administration in Springfield. And while that had somewhat complicated the situation, he did have "approval to kind of go forward with the – kind of a draft of the Consent Decree that we had negotiated up to the point of the election and then kind of got interrupted." (*Id*. at 3).

He went on to say that there were still "outstanding issues" that had been raised by the plaintiffs' counsel which "kind of had [sic] put on hold." But he told the court that he would take those up now with his client and *try to reach agreement on those issues*. Additionally, the Cook County Public Guardian had submitted "some comments and proposed revisions, per Judge Tharp's order." Although the Public Guardian had not been allowed to intervene, Judge Tharp "said that they should submit comments and proposed revisions." Mr. Stratton, the defendant's lawyer, assured Judge Alonso that he would "work on getting those into a revised draft and circulate that to plaintiffs' counsel and the Office of the Guardian." Counsel was hopeful that within a month or so the parties would have an agreement or be very close to an agreement, or at least be able to update the court on progress at that point. (*Id*. at 3-4).

On June 10th, Mr. Stratton sent to Mr. Farley, counsel for the plaintiffs, an unsigned "Draft" of a "Proposed Consent Decree," which he said was being circulated for what he hoped would be a "final review." [Dkt. #119, Exs. A, D]. Judge Tharp's minute order of July 15, 2014 noted that the defendant expected to present a draft consent decree to plaintiffs by September 15. [Dkt. #119, Ex. B-2]. On June 11, 2015, Mr. Stratton, told the court that there was a "draft decree circulating on [his] side for final review and then signature." [Dkt. #119, Ex. E]. Not only was the review by the defendant not completed, but the court was told that the issue of attorney's fees is still "out there." Mr. Stratton said that Mr. Farley, had made a proposal about deferring agreement on the amount of fees to be paid to class counsel, and he was hopeful the issue could be resolved and would not

3

prevent the parties from moving forward with a motion for preliminary approval of a consent decree. (*Id.* at 2).

Mr. Farley's proposal about deferring agreement on the issue of attorney's fees was raised again in his email of July 17, 2015 to Mr. Stratton. In it, he again asked if the defendant would "defer the issue of [attorney's fees] and costs as suggested in my prior correspondence to you." [Dkt. #119, Ex. F; Dkt. #119-6, at 2]. Mr. Stratton's reply email flatly rejected Mr. Farley's offer: "We still need to discuss fees. My client would like to resolve the issue [of fees] before we finalize the decree instead of deferring it." *Id.*[2]

Since it appeared that the evidence on which the plaintiffs' motion relied rather significantly undermined its thesis and "demonstrate[d] that no contract has been reached," *PFT Roberson, Inc. v. Volvo Trucks North America, Inc.*, 420 F.3d 728, 732 (7th Cir. 2005), I inquired of the plaintiffs' counsel at a status hearing whether he had any evidence beyond the exhibits attached to the motion.

---

[2] Of course, the parties could have agreed to resolve the impasse in the way Mr. Farley had suggested. *See e.g., In re CertainTeed Corp. Roofing Shingle Products Liability Litigation*, 269 F.R.D. 468, 479 (E.D.Pa.2010); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J.2005). But the defendant would not agree. Hence, in classic parlance, there was no "meeting of the minds."

Although the cases often use the phrase, "meeting of the minds," as a handy shorthand, the language is misleading if taken literally. *See Laserage Technology Corp. v. Laserage Laboratories, Inc.,* 972 F.2d 799, 802 (7th Cir. 1992). "The law has nothing to do with the actual state of the parties' minds. In contract, as elsewhere, it must go by externals, and judge parties by their conduct." Holmes, The Common Law, 242 (1881) (Howe ed., Harvard University Press 1963). A contracting party cannot expect that the other party will "peek into" the other's "mind and discover" that it had a different view of the terms than stated in the contract. *Aeroground, Inc. v. CenterPoint Properties Trust,* 738 F.3d 810, 813 (7th Cir. 2013). *See ConFold Pacific, Inc. v. Polaris Ind.,* 433 F.3d 952 (7th Cir. 2006); *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 814 (7th Cir. 1987). Thus, the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on their outward expression of assent as evidenced by the language used, the contract's purpose, and all of the relevant circumstances surrounding the contract's formation. *See Winforge, Inc. v. Coachmen Industries, Inc.,* 691 F.3d 856, 875 (7th Cir. 2012); *Rain v. Rolls–Royce Corp.,* 626 F.3d 372, 382 (7th Cir. 2010); E. Allan Farnsworth, Farnsworth on Contracts, § 7.10 at 287 (3rd ed. 2004).

4

He said that he did not, and he declined my invitation to file his own Declaration regarding conversations or communications he may have had with counsel for the defendant that he thought might support his claim that a settlement agreement had been reached.

The defendant's comprehensive response to the plaintiffs' motion was supported by relevant case authority and extended argument. Then came the plaintiffs' 15-page reply brief, filled with the kinds of developed argument and extensive citation to case authority that, with one exception, could and should have been in the opening brief.[3] *Cf. Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987)(Posner, J., concurring); *Paramount Media Group v. Village of Bellwood*, 2015 WL 7008132, at *1 (N.D.Ill. 2015). But the defendant has raised no objection to the scope of the reply brief, and since the underlying issues in this case are of such manifest social importance, there is no need to address the issue further.

**B.**

As is apparent from the preceding discussion, the documents submitted in support of the plaintiffs' motion prove that the parties had not reached a settlement by June 25th, the day the plaintiffs insist defense counsel accepted the Draft Proposed Consent Decree and reached a binding settlement agreement. Indeed, on July 8th, Judge Alonso directed a representative from the general counsel's office of HSF to appear at the next status hearing to report on the status of settlement and Proposed Consent Decree. [Dkt. #111]. At the hearing on the 8th, Mr. Stratton informed the court that the attorney fee issue had not been resolved, and that the defendant was considering Mr. Farley's proposal to defer resolution of the attorney's fees issue until after execution of the Draft Proposed

---

[3] The single exception is the defendant's argument that the plaintiffs' motion is barred by the statute of frauds because the Proposed Consent Decree cannot be performed in a year. [Dkt. ##131 at 1,8]. Given the resolution of the motion, it is unnecessary to reach that issue.

5

Draft Consent Decree. [Dkt. #119, Ex. E at 2].

A week later, the parties again appeared before Judge Alonso. So far as the record reveals, counsel for the plaintiffs did not tell Judge Alonso that there was already a settlement and thus no need for a conference. "[S]ilence like obliquity can be eloquent." *United States v. Curescu,* 674 F.3d 735, 740 (7th Cir. 2012). *Cf., MindGames, Inc. v. Western Pub. Co., Inc.*, 218 F.3d 652, 659 (7th Cir. 2000). So too here. And as noted above, as of July 17, the parties were still discussing Mr. Farley's proposal to defer the fee issue.

Judge Alonso, obviously of the view that the parties had not agreed on all the material terms of the Proposed Consent Decree, referred the parties to me for a settlement conference. [Dkt.#112]. I held two settlement conferences, the first on July 22nd and the second on August 18th. (Dkt. # 115, 117). After the second conference, it was clear that the parties' views of whether there was a preexisting settlement agreement were irreconcilable, as I reported to Judge Alonso when I closed the referral. [Dkt. #117].

## C.

At the core of the plaintiffs' argument is the proposition that attorney's fees are "neither a material nor essential term of the agreement" because the other provisions of the Draft Proposed Consent Decree can be enforced without a present agreement on fees. [Dkt. ## 119 at 2, 134 at 1, 7]. In the plaintiffs' view, *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001), would permit the plaintiffs to then file a fee petition based on the decree. As a general proposition, that's true; but "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). *See also*; *Barnhart v. Thomas,* 540 U.S. 20, 29 (2003); *Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J.,

6

concurring in part and dissenting in part); *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 611 (7th Cir. 2006)(Posner, J.).

*Buckhannon* has nothing to do with the question presented by this case, which is whether there is an enforceable settlement oral agreement between the parties. There the issue was what were the circumstances under which there can be an entitlement to a fee award. One of those circumstances was after the otherwise proper entry of a consent decree:

> In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered "chang[e][in] the legal relationship between [the plaintiff] and the defendant.

532 U.S. at 604 (citations omitted).

The plaintiffs' uncritical reliance on *Buckhannon* is an example of the "wrench[ing of] general language in an opinion out of context" against which the Seventh Circuit has time and again warned. *See e.g.*, *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018 (7th Cir.2006)(Posner, J.); *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir.2005); *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.,* 414 F.3d 700, 705 (7th Cir.2005). And while the parties certainly could have agreed to all the other terms of the Proposed Consent Decree and separately negotiated the question of fees as has occurred from time to time, *see e.g.*, *In re CertainTeed Corp. Roofing Shingle Products Liability Litigation*, 269 F.R.D. 468, 479 (E.D.Pa.2010); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J.2005), the defendant refused to finalize the Consent Decree absent a contemporaneous resolution of the fee issue. This was nothing more than holding on to a significant bargaining chip and is a common occurrence in all forms of litigation. After all, transaction costs in litigation — which include attorneys' fees—are notoriously high. *Cloer v.*

7

*Secretary of Health and Human Services*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *DeNovellis v. Shalala*, 135 F.3d 58, 72 (1st Cir. 1998)*; Haralambopoulos v. Reuter*, 1992 WL 37467, at *1 (N.D.Ill.1992)(Moran,J.). That a litigant insists on cost-certainty and cost minimization as a part of settlement negotiations is not at all surprising. Nor is it untoward. An "ancient and cardinal rule of the law of contracts [is] the offeror is the master of his offer [and] may prescribe as many conditions or terms of the method of acceptance as he may wish...." *Beard Implement Co., Inc. v. Krusa*, 567 N.E.2d 345, 350, 208 Ill.App.3d 953, 962 (4th Dist.1991).

Generally speaking, it is rare that attorney's fees are not an important component of any class action settlement agreement. Case after case has recognized that the amount of attorney's fees is indeed a material term of an agreement and have rejected the argument made here that the absence of agreement on that issue did not prevent there being an enforceable settlement agreement. *See e.g., United States v. Lauckner*, 101 Fed.Appx. 870 (3rd Cir. 2004); *Stubblefield v. Windsor Capital Group*, 74 F.3d 990, 993 (10th Cir.1996); *Freeman v. B & B Associates*, 790 F.2d 145, 153 (D.C. Cir.1986); *Ciampi v. City of Palo Alto*, 2011 WL 4915785, at *3 (N.D.Cal. 2011); *Sowada v. Luberts*, 2011 WL 1869208, at *5 (D.Minn.2011); *Cook v. Huckabey*, 2009 WL 3245278, at *5 (E.D.N.Y. 2009); *Ryles v. Palace Hotel*, 2006 WL 3093678, at *3 (N.D.Cal. 2006); *AngloDanish Fibre Industries, Ltd. v. Columbian Rope Co.*, 2002 WL 1784490, at *4 (W.D.Tenn. 2002).

The plaintiffs' *a priori* argument that attorney's fees are not a material element of an agreement fails to take note of these and other cases and ignores the obvious fact that "for purposes of deciding what someone will demand by way of a settlement, materiality is in the eye of each settling party." *Normann v. DDRA Arrowhead Crossing, LLC*, 2013 WL 2635587, at *3 (D.Ariz. 2013). As in *Normann,* just how important resolution of the attorney's fees issue was to both sides

is evidenced by the email exchange discussed above and by the inclusion of an open attorney's fees and costs provision in the Draft Proposed Consent Decree. [Dkt. #119, Ex. A at 18, ¶26].[4]

**E.**

Not only is there an unresolved material issue that precludes a finding that the parties orally agreed to a settlement agreement in the form of the Draft Proposed Consent Decree, but the absence of an executed agreement in the context of this case is an insuperable barrier to granting the plaintiffs' motion. Parties negotiating a contract – and that, after all, is what a settlement agreement is, *Abbott Labs. v. Alpha Therapeutic Corp*., 164 F.3d 385, 388 (7th Cir. 1999) – can make their agreement contingent on the execution of a formal, written document. *PFT Roberson, Inc.,* 420 F.3d at, 731; *Quake Construction, Inc. v. American Airlines,* 141 Ill.2d 281, 287, 556 N.E.2d 990, 993 (1990). Until then each party is "free to walk away ...." *Solaia Technology LLC v. ArvinMeritor,* 2006 WL 695699 at *10 (N.D.Ill.2006). The principle is of ancient vintage. *See South Boston Iron Co. v. U.S.,* 118 U.S. 37 (1886); *Ambler v. Whipple,* 87 U.S. 546, 556 (1874).

A "'preliminary writing that reflects a tentative agreement contingent upon the successful completion of negotiations that are ongoing, does not amount to a contract that binds the parties.'" *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr*., 692 F.3d 580, 587 (7th Cir. 2012). "The parties decide for themselves whether preliminary negotiations will bind them, and they do so through their words." *Abbott Labs*., 164 F.3d at 388. "Words expressing contingency or dependence on a subsequent event . . . will do." *PFT Roberson, Inc.,* 420 F.3d at 732; *Citadel Grp. Ltd.*, 692 F.3d at 587.

---

[4] Paragraph 26 of the Draft Proposed Consent Decree provided: "Defendant agrees to pay to Class Counsel the sum of $_____ in full settlement of all of Plaintiff's claims for attorney's fees and costs associated with this litigation...."

9

Illinois is averse to enforcing tentative agreements that are contingent on the signing of formal or final documents. As *PTF Roberson* explained, "[p]arties may negotiate toward closing a deal without the risk that a jury will think that some and intermediate document is a contract, and without the 'fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics.'" 420 F.3d at 733. *See also Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 424 (7th Cir. 1989). And so, even when there has been a point by point agreement on essential terms, if the clear intent of the parties is that they will not be legally bound until the execution of a formal agreement, then no contract comes into existence until such execution. *See*, *Quake Const.*, 141 Ill. 2d at 287; *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 143-44, 500 N.E.2d 1, 5 (1986); *Lambert Court v. Evans*, 575 F.2d 132, 135 (7th Cir. 1978); *Loop Paper Recycling, Inc. v. JC Horizon Ltd.*, 2010 WL 1655254 (N.D.Ill. 2010) (collecting cases).

The record in this case shows that there was to be no settlement until the execution of the Draft Proposed Consent Decree. It provided that "no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this document regarding the subject matter of this proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein." [Dkt. #119, Ex. A at 19, ¶31].[5] Along with the parties' own discussions both in and out of court, this is a further manifestation of the parties' intentions reflecting the parties'

---

[5] The importance to the parties of a written document was further evidenced by the provision prohibiting Amendment or modification absent an agreement in writing signed by the parties or approved by the court. *Id*. at 20, ¶33. The Draft Proposed Consent Decree also contained a representation that each party executing the Decree was authorized to do so and that each executed counterpart will be deemed an original and all of which taken together shall constitute a single instrument. The Proposed Decree envisioned execution via facsimile transmission or electronic mail. *Id*. at ¶36.

understanding that there would be no agreement until the Proposed Consent Decree was executed.

"The inquiry into whether the parties to an agreement intended that it be reduced to writing may include consideration of the following factors: whether the contract is one usually put into writing; whether there are a few or a great many details; whether the amount of money involved is large or small; whether the agreement requires a formal writing for the full expression of the covenants; and whether the negotiations themselves indicated that a written document was contemplated as their conclusion." *Ceres Illinois*, 114 Ill. 2d at 144, 500 N.E.2d at 5. Each of these factors lead inexorably to the firm conclusion that the parties envisioned a signed agreement as a precondition to contract formation. Given the complexity of the subject matter of the case and the complicated and highly specialized nature of the extended performance required by the defendant under the Proposed Consent Decree, a signed agreement was obviously essential. The Proposed Draft Decree covered the provision of extensive and specialized mental health services to perhaps tens of thousands of Medicaid eligible individuals under the age of 21. [Dkt. #119-1, Dkt. #122, at 2]. The obligations of the defendant were complex and highly specialized and precluded simple summarization. It necessarily would involve the cooperation of multiple state agencies, including the Illinois Department of Human Services, the Illinois Department of Children and Family Services, the Illinois Department of Juvenile Justice, the Illinois Department of Public Health, and the Illinois State Board of Education. [Dkt. #119-1, at 12]. The cost will, of course, be significant, if not staggering. Since the Proposed Consent Decree, which detailed the defendant's numerous obligations was not executed, there is no binding settlement agreement.

## CONCLUSION

While the social benefit to be obtained from implementation of the Draft Proposed Consent

Decree seems apparent and significant, that is not a basis for ignoring long settled principles of contract law and "yield[ing] to spasmodic sentiment, to vague and unregulated benevolence." Cardozo, The Nature Of The Judicial Process, 141 (1921). Adherence to established principles is no less critical in this case than in any other. "In the long run judges serve best by enforcing the laws on the books and not the rules litigants (even judges) wish were there." *R.R. Donnelley & Sons Co. v. F.T.C.*, 931 F.2d 430, 433 (7th Cir.1991)(parenthesis in original). *See, also, Cardozo, supra.,* at 8, 33–34, 68–69; *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 221 (1917)(Holmes, J., dissenting); *United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007) (Posner, J.). It is respectfully recommended that the plaintiffs' motion to enforce the Proposed Consent Decree as a Settlement Agreement [Dkt. # 119] be denied.

DATE: 11/19/15  **ENTERED:** _/s/ Jeffrey Cole_

UNITED STATES MAGISTRATE JUDGE

Under Fed.R.Civ.P. 72(b), parties must file written objections to this Order within 14 days, and review will be *de novo*. Failure to file timely objections constitutes a waiver of any objections to this order. *Williamson v. Indiana University*, 345 F.3d 459, 464 (7th Cir. 2003); *United States v. Brown*, 79 F.3d 1499, 1504 (7th Cir. 1999).