# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **N. B.** by and through his mother, Angela Buchanan, **R.F.** by and through his mother, Danielle Fravel, **J.J.** by and through his mother, Phoebe Johnson, **M.Wa.** by and through his mother, Deborah Walters, **M. Wh.** by and through his mother, Patricia Wheatfill, **M. B.** by and through her mother, Mary Bailey, **S. B.** by and through his parents, Wallace Busch and Dawne Busch, **I. D.** by and through his mother, Magen Drew, **S. M.** by and through his parents, Thomas Marathaler and Erin Marathaler, individually and on behalf of a class, | ) ) ) ) ) ) ) ) ) ) ) ) No. 11-6866 ) ) Hon. Jorge L. Alonso |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| **FELICIA F. NORWOOD,** in her official capacity as Director of the Illinois Department of Healthcare and Family Services, | ) ) ) ) ) |
| Defendant. | |

---

**CONSENT DECREE**

## I.   INTRODUCTION AND BACKGROUND

1.     Nine children with mental health or behavioral disorders, through their next friends ("Plaintiffs"), filed this class action lawsuit on September 29, 2011, seeking declaratory and injunctive relief to redress violations of the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(43), 1396d(r), and Title II of the Americans with Disabilities Act ("Title II" or "ADA"), 42 U.S.C. § 12132, and the parallel provision of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504" or "RA").

2.     Plaintiffs claim that Defendant, Felicia F. Norwood, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, violates their rights by failing to provide medically necessary mental health and behavioral services as required under EPSDT, including but not limited to home- and community-based services, in the most integrated setting appropriate to their needs, as required under the ADA and RA. Plaintiffs seek declaratory and injunctive relief that would require Defendant to implement appropriate screening and treatment alternatives to the acute care provided in general and psychiatric hospitals. Certain Class Members have filed separate individual lawsuits that, in addition to claims seeking declaratory and injunctive relief on the same bases as the claims raised by Plaintiffs herein, seek monetary damages as a result of Defendant's alleged failure to provide those alternatives.

3.     On February 13, 2014, the Court certified a class under FRCP 23(b)(2) defined as "All Medicaid-eligible children under the age of 21 in the State of Illinois: (1) who have been diagnosed with a mental health or behavioral disorder; and (2) for whom a licensed practitioner of the healing arts has recommended intensive home- and community-based services to correct or ameliorate their disorders."

4.     The Parties desire to resolve this matter amicably and without going to trial. Without conceding any infirmity in their claims or defenses, the Parties have engaged in arms-length settlement negotiations to resolve the claims raised by this action as set forth in Plaintiffs' Second Amended Complaint. Plaintiffs and Defendant have reached an agreement for settling this litigation that the Parties believe is fair, reasonable, and adequate to protect the interests of all Parties.

5.     By agreeing to this Consent Decree, Defendant does not admit to any liability, fault, wrongdoing, or violation of law regarding the allegations made in this action or any other actions resolved herein. Moreover, no part of this Consent Decree may be used as evidence of Defendant's liability, fault, wrongdoing, or violation of law in any other legal proceeding.

Therefore, based upon all of the foregoing, and the Court being otherwise fully advised, the Court hereby ORDERS, ADJUDGES and DECREES as follows:

## DECREE

## II.     JURISDICTION

6.     The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343.

## III.     PURPOSE

7.     The purpose of this Consent Decree is to design and implement a systemic approach through which Class Members will be provided with reasonable promptness the Medicaid-authorized, medically necessary intensive home- and community-based services,

3

including residential services, that are needed to correct or ameliorate their mental health or behavior disorders. The Parties acknowledge that Defendant has commenced significant initiatives to enhance the delivery of children's Medicaid-funded mental and behavioral health services. Such improvements have been ongoing throughout the pendency of this litigation but independently thereof and will continue prior to the development of the Implementation Plan addressed in this Consent Decree.

## IV.  DEFINITIONS

8.  As used herein, the following terms have the following meanings:

a.  "Applicable law" means Title XIX of the Social Security Act, implementing regulations, directives, and sub-regulatory guidance from the federal Centers for Medicare and Medicaid Services ("CMS"), and any other applicable federal law.

b.  "Approval Date" means the date on which the Court enters this Consent Decree.

c.  "Class Counsel" means Attorneys Robert H. Farley, Jr., Michelle N. Schneiderheinze and Mary Denise Cahill.

d.  "Class" and "Class Members" mean the individuals who meet the definition set forth in Paragraph 3.

e.  "Continuum of care" means a continuum of medically necessary mental and behavioral health services authorized and required by the EPSDT requirement of the Medicaid Act (*see* 42 U.S.C. §§ 1396a(a)(43); 1396d(4)(B); 1396d(a)(13)(C), 1396d(a)(16), and 1396d(r)(5)).

f.     "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

g.     "Defendant" means the Director of the Illinois Department of Healthcare and Family Services ("Director"), in her official capacity, and any of her successors. For purposes of Sections V-VII, and X, "Defendant" shall also include, where necessary and appropriate, any other State agency that is assisting the Director in fulfilling obligations under this Consent Decree; provided, however, that the inclusion of other State agencies in this definition neither binds those agencies to the Consent Decree's obligations nor relieves the named Defendant of her obligations under this Consent Decree.

h.     "EPSDT" means the Early and Periodic Screening, Diagnostic, and Treatment services requirement of Title XIX of the Social Security Act, which provides that, for Medicaid-eligible children under the age of 21, a State must provide "screening services … [and] necessary health care, diagnostic services, treatment, and other measures described in subsection [1396d(a)] to correct or ameliorate defects and physical and mental illness and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(1),(5). In subsection 1396d(a), medical assistance is defined to include "other diagnostic, screening, preventive, and rehabilitative services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level." 42 U.S.C. § 1396d(a)(13).

5

i.    "Expert" means the person who carries out the duties described in Section VIII below.

j.    "Family" means the Class Member's parents, guardians, caretakers, and other immediate family members.

k.    "Illinois Medicaid State Plan" or "State Plan" means the plan the State of Illinois submitted to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS"), in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396v, in effect as of the Approval Date, including any subsequent amendments thereto.

l.    "Implementation Plan" means the plan described in SectionVI.

m.    "Licensed Practitioner of the Healing Arts" ("LPHA") means an Illinois-licensed health care practitioner who, within the scope of Illinois law and the scope of his or her practice, has the ability to independently make clinical assessment, certify a diagnosis, and recommend treatment for persons with mental illness or behavioral disorders.

n.    "Managed Care Entity" ("MCE") means an entity or organization under contract with the State of Illinois to manage, coordinate, or facilitate arrangement of any type of health care for Medicaid clients.

o.    "Named Plaintiffs" means the following individuals: N.B., R.F., J.J., M.Wa., M.Wh., M.B., S.B., I.D., and S.M.

p.    "Parties" means Plaintiffs and Defendant, collectively.

q.    "Provider" means an entity or individual enrolled by the Department of Healthcare and Family Services to provide Medicaid services.

r.      "Systems of Care" ("SOC") means a comprehensive spectrum of behavioral health services and supports, which are organized into a coordinated network to meet the multiple and changing needs of Class Members, and that are family-driven, youth-guided, individualized, culturally and linguistically competent, data-driven, and community-based.

## V.      THE SYSTEM FOR PROVIDING MENTAL AND BEHAVIORAL HEALTH SERVICES TO CHILDREN UNDER THE EPSDT REQUIREMENTS

9.      Defendant shall ensure the availability of services, supports and other resources of sufficient quality, scope and variety to meet her obligations under the Consent Decree and the Implementation Plan as necessary to achieve the Benchmarks required in Paragraph 35. Defendant shall implement sufficient measures, consistent with the preferences, strengths and needs of the Class Members, to provide the services required by the terms of this Consent Decree.

10.     Annual budgets submitted by Defendant on behalf of her agency shall request sufficient funds necessary to develop and maintain the services, supports and structures described in the Consent Decree for which Defendant's agency has statutory and regulatory authority. Nothing contained in this Paragraph shall be deemed to create or operate as (a) a condition or contingency upon which any term of the Consent Decree depends; or (b) a circumstance entitling Defendant to alter, amend or modify the implementation or timing of Defendant's obligation under the Consent Decree.

11.     Subject to the provisions of this Consent Decree, Defendant will make available to Class Members a continuum of medically necessary mental and behavioral health services authorized and required by the EPSDT requirement of the Medicaid Act (*see* 42 U.S.C. §§ 1396a(a)(43); 1396d(a)(4)(B); 1396d(a)(13)(C), 1396d(a)(16), and 1396d(r)(5)).

12.     The continuum of care will be provided through the development of a Medicaid behavioral health delivery model ("Model"). The process and principles of the Model shall be set forth in the Implementation Plan. Among other matters, Defendant shall be allowed to incorporate SOC, care coordination, case management, and community integration into the Model and Implementation Plan.

13.     The Model shall be developed and implemented in phases and the Medicaid services included in the continuum of care under the Model shall be set forth and defined in this Consent Decree and the Implementation Plan. The continuum of care available to Class Members shall include all medically necessary home- and community-based services and supports, as well as inpatient psychiatric services in a Psychiatric Residential Treatment Facility ("PRTF"), that are authorized, approved, and required under 42 U.S.C. § 1396d(a)(16), 1396d(h) and implementing federal regulations and that are eligible for Federal Financial Participation. The Implementation Plan shall describe a method to triage or otherwise phase in the utilization of PRTF services during the development of home- and community-based services in the Model so as to serve Class Members in the least restrictive appropriate setting and avoid the unnecessary institutionalization of Class Members. Nothing in this Consent Decree shall require or authorize any particular service to be covered or made available to any Class Member if such service is beyond the federal Medicaid provisions that authorize services. This Consent Decree shall not override or supersede applicable Medicaid law, and nothing in this Consent Decree shall require the provision of any type of service prior to approval from CMS.

14.     Beyond Defendant's obligation to provide services in accordance with the EPSDT requirements of Title XIX, in conformance with applicable law regarding the integration mandate under the Americans with Disabilities Act and the Rehabilitation Act, this Consent

Decree shall not dictate how Defendant shall otherwise operate or fund the State's Medical Assistance programs.

15.     Services provided through the continuum of care shall be based on clinical decisions and medical necessity criteria as determined by Defendant, consistent with applicable law. Defendant may make medical necessity determinations and establish utilization control procedures through the use of such entities as Quality Improvement Organizations or other entities chosen by Defendant. Defendant shall retain the authority to establish medical necessity criteria and cost sharing as permitted under Title XIX and, where applicable, approval by CMS. Defendant may require Class Members to enroll with a managed care entity for any or all care coordination, case management and services. Nothing in this Consent Decree shall prohibit Defendant from using managed care entities as determined by Defendant and authorized or required under applicable law. Any services provided pursuant to this Consent Decree shall remain subject to all applicable requirements herein, even if arranged through managed care entities or other third parties.

16.     After the Approval Date and before final approval of the Implementation Plan, the parties agree to work collaboratively to address the needs of Class Members who require PRTF services on an emergent basis.

17.     Defendant shall timely develop and implement a Model in the Implementation Plan that shall, at a minimum:

        a.      Include a structure to link Class Members to medically necessary services on the continuum of care;

        b.      Provide statewide medically necessary mental and behavioral health services and supports required and authorized under the EPSDT requirement of the

Medicaid Act that are sufficient in intensity and scope and appropriate to each Class Member's needs consistent with applicable law;

      c.      Provide notice to HFS-enrolled Primary Care Physicians ("PCPs") who perform periodic and medically necessary inter-periodic screenings to offer Class Members and families the opportunity to receive a mental and behavioral health screening during all periodic and inter-periodic screenings;

      d.      Implement a standardized assessment process, including an assessment tool that shall be utilized statewide, for the purpose of determining Class Members' strengths and needs and informing treatment planning, medical necessity, intensity of service, and, as applicable, appropriate services for Class Members;

      e.      Establish a stratification methodology of identifying which Class Members qualify for particular services (including sub-acute care), the intensity of service delivery, and the intensity of care coordination, based upon the standardized assessment process and consistent with the requirements of the Consent Decree;

      f.      Establish tiers of care coordination consistent with the requirements of the Consent Decree, with caseloads and service intensity consistent with the stratification and assessment process. The Implementation Plan may provide that Class Members demonstrating the greatest needs and qualifying for intensive community services and sub-acute inpatient services shall qualify for intensive care coordination, such as High Fidelity Wraparound services, as defined by the National Wraparound Initiative (http://nwi.pdx.edu/). To the extent Class Members qualify for the services set forth in this Paragraph, such services will be provided in a timely manner;

g.      Prepare and implement with reasonable promptness individual plans of care for each Class Member to serve the Class Member in the least restrictive setting appropriate to meet the Class Member's treatment goals. Individual plans of care shall describe the Class Member's treatment goals, objectives, and timetables for achieving these goals and objectives, including moving to less intensive levels of service, and that set forth the specific services that will be provided to the Class Member and family, including the frequency, intensity and providers of such services. The individual plans of care shall be reviewed at least annually and updated as needed to reflect the changing needs of the Class Member and family, using, as necessary, re-assessment and other clinical instruments to identify the changing needs of the Class Member and family. Individual plans of care may be prepared by or in conjunction with one or more MCEs;

h.      Establish child and family teams including the group of people chosen by the Class Member and family with the aid of the care coordinator to assist with the treatment planning process;

i.      Establish a Mobile Crisis Response ("MCR") model, including the development of crisis stabilizers, to provide behavioral health crisis response on a twenty-four hour a day, seven day a week basis; the MCR shall be established consistent with, or as the successor to, the Screening, Assessment and Support Services ("SASS") program;

j.      Include a plan to coordinate among providers the delivery of services and supports to Class Members in order to improve the effectiveness of services and improve outcomes;

       k.      Establish a process to communicate with Class Members, families, and stakeholders about the service delivery, service eligibility, and how to gain access to the Model, regardless of the point of entry or referral source; and

       l.      Contain procedures to minimize unnecessary hospitalizations and out-of-home placements.

18.   Nothing shall prohibit Defendant from engaging, collaborating with, or delegating service oversight or operational duties established under this Consent Decree or the Implementation Plan to another State entity as permitted under applicable law. The duties or responsibilities delegated to another State entity shall be performed consistent with Defendant's obligations under this Consent Decree and Implementation Plan; provided, however, that the inclusion of other State agencies in this Paragraph neither binds those agencies to this Consent Decree's obligations nor relieves Defendant of her obligations under this Consent Decree. This Consent Decree does not require the use of any particular federal funding mechanism, and nothing in this Consent Decree requires that payment for any service be made out of any particular state agency or entity budget or appropriation.

19.   As part of the Implementation Plan, Defendant may establish operational policies and structures necessary to implement this Consent Decree, including but not limited to financial and budgeting matters, funding of services, and interagency coordination of services, and that involve coordination with other child-serving state agencies and boards, including but not limited to: the Illinois Department of Human Services, including the Division of Mental Health and the Division of Developmental Disabilities; the Illinois Department of Children and Family Services; the Illinois Department of Juvenile Justice; the Illinois Department of Public Health; and the Illinois State Board of Education.

20.      Nothing shall prohibit Defendant from engaging, consulting, collaborating with, or utilizing contractors or other State entities as she determines necessary to (a) design, review, coordinate, or manage the development of any part of the Model or the Implementation Plan, (b) provide planning, education, outreach, training, analysis, and technical support or advice to Defendant, other State entities, providers, or contractors (c) provide, coordinate, manage, review, or authorize care or services to Class Members, or (d) implement any part of the Model or the implementation plan. The use of contractors or other State entities does not relieve Defendant of her obligation to comply with the terms of this Consent Decree and Implementation Plan.

## VI.      IMPLEMENTATION

21.  Within nine (9) months after the Approval Date, Defendant shall provide Class Counsel and the Expert with a draft Implementation Plan. Class Counsel and the Expert will provide input regarding the draft Implementation Plan, which shall be finalized within twelve (12) months following the Approval Date. If, after negotiation, Class Counsel disagrees with Defendant's proposed Implementation Plan, the Court shall resolve all disputes and approve a final Implementation Plan. The Implementation Plan, and all amendments or updates thereto, shall be filed with the Court and shall be incorporated into and become enforceable as part of this Consent Decree. Defendant shall make the Implementation Plan available to Class Members and the public by posting it to Defendant's website within five (5) business days following its approval by the Court and within five business days of any changes to the Implementation Plan. The Implementation Plan, must, at a minimum:

    a.      Establish specific tasks, timetables, goals, programs, plans, strategies and protocols describing Defendant's approach to fulfilling all of the requirements of this Consent Decree;

13

      b.     Describe the hiring, training and supervision of the personnel necessary to implement this Consent Decree;

      c.     Describe the activities required to support the development and availability of services, including inter-agency agreements, and other actions necessary to implement this Consent Decree;

      d.     Identify, based on information known at the time the Implementation Plan is finalized and updated on a regular basis, any Medicaid-authorized services or supports anticipated or required in Service Plans developed pursuant to this Consent Decree that are not currently available in the appropriate quantity, quality or geographic location;

      e.     Describe the methods by which information will be disseminated, the process by which Class Members may request services, and the manner in which Defendant will maintain current records of Class Member service requests;

      f.     Describe the requirements of an interim plan of care for individuals receiving services in accordance with Paragraphs 24-25 that is consistent with Paragraph 17(g); and

      g.     Describe the methods by which Defendant intends to meet the obligations of this Consent Decree.

22.     The Implementation Plan shall be reviewed at least annually and updated or amended as necessary. Class Counsel and the Expert shall have the opportunity to review and comment upon any proposed updates or amendments at least 60 days before the effective date of any updates or amendments. In the event Class Counsel disagree with Defendant's proposed updates or amendments, Class Counsel shall state all objections in writing at least 30 days before the effective date of any updates or amendments. In the event that Defendant and Class Counsel

do not agree on updates and amendments, the Court shall resolve any and all disputes before any updates or amendments become effective.

## VII. NAMED PLAINTIFFS AND CLASS MEMBERS WHO RECEIVED PRELIMINARY OR INTERIM RELIEF

23.     On the Approval Date, any prior Temporary Restraining Order ("TRO"), Preliminary Injunction ("PI"), or other order for relief issued in this case against Defendant on behalf of a Named Plaintiff or Class Member for EPSDT services shall dissolve. To the extent any other court has issued an order granting relief related to EPSDT services for any plaintiff in the individual actions listed in Paragraph 26, the applicable parties shall jointly move for dissolution of all such orders.

24.     After the Approval Date, any services granted to a Named Plaintiff or Class Member pursuant to any TRO or PI dissolved in accordance with Paragraph 23, or pursuant to a request made by Class Counsel without the entry of a court order during the pendency of this litigation prior to the Approval Date, shall continue until the services are either no longer necessary or the Class Member's needs are addressed in a manner consistent with the provisions of the Consent Decree and Implementation Plan. No later than 30 days after the Approval Date, Class Counsel shall provide a list identifying all individuals eligible for services pursuant to this Paragraph.

25.     For each Named Plaintiff or Class Member who is receiving services pursuant to Paragraph 24, Defendant will assign a care coordinator, from an entity contracted by Defendant to provide such services, to manage the Class Member's case and provide care coordination services. The care coordinator will assist in developing an interim service plan in accordance with the Implementation Plan. Each Named Plaintiff or Class Member, and his or her family as necessary, shall cooperate with the care coordination service.

26.     This Consent Decree applies to all Named Plaintiffs and Class Members and fully resolves all claims for any form of relief that have been or could have been raised by or on behalf of the Named Plaintiffs and Class certified by the Court against Defendant or the Department of Healthcare and Family Services relating to the subject of this action. With respect to the other pending individual EPSDT cases listed in this Paragraph beyond the *N.B. v. Norwood* class action, this Consent Decree also fully resolves any and all claims for injunctive or declaratory relief arising from those individual actions. Any additional non-class claims arising from those individual actions shall be resolved through separate settlement agreement, and those individual actions shall be dismissed in their entirety with prejudice and without award of attorneys' fees or costs; however, such final resolution and dismissal of any remaining non-class claims in individual actions brought by plaintiffs A.F. and L.H. shall not be required prior to final approval of this Consent Decree. All fees and costs associated with all individual actions listed in this Paragraph, including those by plaintiffs A.F. and L.H., are addressed in Paragraph 39 of this Consent Decree. The other pending individual actions are as follows: *K.P., et al. v. Norwood*, 12-2044 (C.D. Ill.); *S.B. v. Norwood*, 12-3077 (C.D. Ill.); *J.T. v. Norwood*, 12-3203 (C.D. Ill.); *T.G., et al. v. Hamos*, 12-3320 (C.D. Ill.); *A.K., et al. v. Norwood*, 13-3020 (C.D. Ill.); and *H.H., et al. v. Hamos*, 14-2732 (N.D. Ill.).

## VIII.   EXPERT MONITORING

27.     The parties will agree on one (1) Expert within ninety (90) days of the Court's approval of this Consent Decree.  The Expert shall be knowledgeable regarding (1) the delivery of medically necessary mental and behavioral health services to children who have been diagnosed with a mental health or behavioral disorder; (2) the principles of SOC and community integration; (3) the administration of Medicaid-funded services through a state plan and federally

authorized waivers; (4) federal Medicaid funding processes and mechanisms; and (5) the use of care coordination and managed care in service delivery. Once the Expert is agreed upon, the parties shall file a motion for an agreed order of the court that identifies the Expert.

28.     Defendant shall compensate the Expert and his or her staff at their usual and customary rate, subject to approval by the Court. Defendant shall reimburse all reasonable expenses of the Expert and the Expert's staff, consistent with the guidelines set forth in the "Governor's Travel Control Board Travel Guide for State Employees." Defendant may seek relief from the Court if Defendant believes that any of the Expert's charges is inappropriate or unreasonable.

29.     In the event that the Parties are unable to agree upon the selection of an Expert, as provided in Paragraph 27, Class Counsel and Defendant each shall propose to the Court a candidate, and any alternative candidates meeting the qualifications set forth in Paragraph 27, within 30 days. The Court, with input from the Defendant and Class Counsel, may select an Expert from the candidates submitted or request that the parties submit one or more additional candidates, meeting the qualifications of Paragraph 27, for consideration within 30 days.

In the event the Expert resigns or otherwise becomes unavailable, and the Parties cannot agree on a replacement Expert to recommend to the Court, the process described above will be used to select a replacement Expert.

30.     The Expert's duties shall include evaluating and reporting to the Court and the Parties about Defendant's progress on implementing the requirements as necessary to achieve the Benchmarks in Paragraph 35 of this Consent Decree. Defendant will comply with the Expert's reasonable requests for documentation, data or other information that is under the Defendant's control and is related to the Expert's review and evaluation of Defendant's compliance with the

Consent Decree. Defendant will, upon reasonable notice, permit the Expert to conduct confidential interviews of Defendant's staff and consultants, except her attorneys. The expert will have reasonable access to any Class Members and their records and files, as well as to those service providers, facilities, buildings and premises that are reasonably related to the Expert's review and evaluation of Defendant's compliance with the Benchmarks in Paragraph 35. The parties shall comply with each other's requests for information that are reasonably related to Defendant's compliance with the Decree, including without limitation requests for records and other relevant documents that are under the party's control, pertinent to implementation of the Decree or to Class Members, and covered by an appropriate protective order. The Parties also shall be permitted to review documents provided to the Expert. The parties and the Expert shall agree to a Protective Order prior to conducting any interviews or sharing any information, records or files to ensure that all information is kept confidential.

31.     Within sixty (60) days after the first anniversary of the approval of the Implementation Plan, the Expert shall file a written report with the Court and the parties regarding the Defendant's progress on implementing the requirements of this Consent Decree and the Implementation Plan as necessary to achieve the Benchmarks in Paragraph 35. The Expert shall redact any portions of the report necessary to make certain confidential matters and information are not disclosed. The Expert shall issue additional annual reports to the Court and the Parties corresponding with the date of the first Expert report. The Defendant shall post all Expert reports filed with the court, subject to redaction if redacted in the publicly available court file, to the Defendant's website.

## IX.     DISPUTE RESOLUTION

32.     In the event that Class Counsel believes that Defendant is not complying with the terms of the Consent Decree as necessary to achieve the Benchmarks provided in Paragraph 35, Class Counsel shall provide written notice to Defendant of Defendant's potential non-compliance. Defendant shall respond in writing within thirty days of receipt of Class Counsel's notification of a claim of non-compliance. Class Counsel shall advise Defendant of their acceptance or rejection of Defendant's response within seven business days of their receipt of Defendant's response. If rejected, the Parties shall meet within ten days to discuss and attempt to resolve any matter addressed in the written submissions. If the Parties are not successful in their efforts to resolve the matter, they may jointly or individually seek intervention from the Court for the purpose of effecting compliance with the provisions specified in the written submissions.

33.     Class Counsel shall not seek an order of contempt against Defendant for the purpose of securing compliance with any term or related to any requirement of this Consent Decree, except as may be necessary and related to the Defendant's compliance with a prior order entered pursuant to the processes followed under Paragraph 32.

34.     No Class Member, Plaintiff(s), Class Counsel, or any other group or entity purporting to act on behalf of any Class Members may seek an order of contempt or seek to enforce this Consent Decree solely on the basis of any isolated instance of alleged non-compliance with this Consent Decree, or any allegation of non-compliance on the basis of any term or requirement not essential for the Defendant's achievement of the Benchmarks in Paragraph 35 or for the purpose only of seeking any individualized or other relief not directly required for Defendant's systemic achievement of the Benchmarks in Paragraph 35. Defendant's compliance with this Consent Decree shall not be evaluated on the basis of any issue or

requirement not expressly required or prohibited by this Consent Decree as necessary to achieve the substantive requirements of the Benchmarks in Paragraph 35.

## X.    BENCHMARKS

35. Defendant is expressly permitted to implement the Model described in Paragraph 17 in phases.  Defendant shall provide certification to the Court, Class Counsel and the Expert upon substantially meeting the following Benchmarks:

A. Benchmark No. 1:  Within five (5) years after approval of the Implementation Plan, Defendant shall accurately certify to Class Counsel, the Expert and the Court that substantially all systems and processes that Defendant intends to utilize to implement the Model in accordance with the Implementation Plan are at least operational as outlined in the Implementation Plan.

B.  Benchmark No. 2:  Within two (2) years after the successful certification of Benchmark No.1, Defendant shall accurately certify to Class Counsel, the Expert and the Court that the Model is at a capacity to substantially serve the Class's needs for intensive home- and community-based services on a systemic level statewide.  After successful certification of Benchmark No. 1, the Implementation Plan shall be amended (in accordance with the process set forth in Paragraph 22) to establish the standard for sufficient capacity that is necessary to substantially serve the Class's needs for intensive home- and community-based services on a systemic level statewide. Nothing in this Consent Decree shall be interpreted to require that the standard for Benchmark No. 2 guarantees that each Class Member will receive care or services precisely tailored to his or her particular needs.

36. If Class Counsel disputes the accuracy of a certification made by the Defendant on the Benchmarks in Paragraph 35, Class Counsel shall notify the Court simply that the certification is being disputed and the Parties shall engage in the dispute resolution process described in Section IX to address the certification. If the dispute regarding the certification is resolved by the parties utilizing the dispute resolution process without further involving the Court, the Parties shall jointly notify the Court of the resolution and, when applicable and in the event that the Expert agrees with the certification, of a successful certification of the Benchmark. In the event that the Defendant and Class Counsel agree that either Benchmark has been satisfied but the Expert disagrees, the Parties shall meet and confer with the Expert to attempt to resolve the Expert's disagreement with the certification. If the Parties and the Expert are unable to resolve the issues raised by the Expert, the Expert shall notify the Court in writing, describing his or her concerns within 30 days after completion of meeting and conferring with the Parties. The matter shall then be submitted to the Court for resolution.

37. If the Defendant is unable to make a certification of either of the Benchmarks in Paragraph 35 within the time designated, or if the dispute resolution process results in a determination by the Court or an agreement of the parties that a Benchmark was not met, the Defendant shall, using the process described in Section VI, amend the existing Implementation Plan to include a corrective action plan for meeting the Benchmark's substantive requirement within a specified and reasonable period of time. The Defendant shall certify to Class Counsel, the Expert and the Court once the Benchmark has been met using the same process outlined in Paragraph 36 and this paragraph.

38.     As soon as compliance with both Benchmarks described in Paragraph 35 above is achieved, the Parties will jointly move that the Court terminate this Consent Decree.  Defendant shall publish the notice and the motion on the Defendant's website.

## XI.     ATTORNEYS' FEES AND COSTS

39.     On behalf of Defendant, the State of Illinois agrees to pay to Class Counsel the sum of $1.275 million in full settlement of all of Plaintiffs' claims for attorneys' fees and costs associated with this litigation, the Consent Decree, and the resolution of all individual actions identified in Paragraph 27 above, including those by plaintiffs A.F. and L.H. The Named Plaintiffs, Class Members (including all plaintiffs in the individual actions), and Class Counsel shall not seek any additional or future attorneys' fees or costs beyond those agreed to in this Paragraph, including but not limited to any that may be related to any future implementation, enforcement, compliance, or other work associated with litigation and settlement of matters related to the N.B. v. Norwood class action or the individual actions listed in Paragraph 27; provided, however, if this Decree is not terminated before the end of nine years following the Approval Date, then Class Counsel may file a fee petition for fees and costs incurred after the end of the eighth year following the Approval Date. Such amounts shall be distributed to Class Counsel in three annual payments in the manner set forth in written instructions provided by Class Counsel and agreed to by the Parties. Such amounts shall be set forth in a Judgment Order to be entered by the Court. Defendant shall complete and submit all paperwork necessary for payment of such amounts within five (5) business days after expiration of the time to appeal the fee award without the filing of a Notice to Appeal or after the issuance of the mandate by the highest reviewing court, whichever is later.

## XII.     MISCELLANEOUS PROVISIONS

40.     The Parties agree to use their best efforts to carry out the terms of this Consent Decree. At no time shall any of the Parties or their counsel seek to solicit or otherwise advise the Class Members to submit objections to this Consent Decree or to appeal from the order giving final approval to this Consent Decree.

41.     Any Class Member who disputes a determination regarding eligibility for, or delivery of, services governed by this Consent Decree shall, pursuant to governing law, have the right to appeal such decisions through the existing Fair Hearings process or as otherwise provided by law. Class Members also may avail themselves of any informal appeal process that currently exists. Administrative or other judicial review of any final administrative decision on appeal shall be in accordance with existing law.

42.     This Consent Decree is not intended to and does not limit any other existing rights of Class Members in any other action unless expressly stated herein, including those who are or might be named in a Petition for Adjudication of Wardship filed pursuant to the Juvenile Court Act ("JCA") to enforce their rights for services, monitoring, assistance and placement pursuant to the provisions of the JCA, the Children and Family Services Act, the rules, procedures and policy guides of the Illinois Department of Children and Family Services, or other applicable law.  This Consent Decree does not limit the rights of Class Members to enforce within *B.H. v. Sheldon*, No. 88 C 5599 (N.D. Ill.), any rights they may have pursuant to the *B.H.* Consent Decree or any other orders of the Court in that case.

43.     This Consent Decree contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this document regarding the subject matter of this proceeding shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained

herein. This Consent Decree supersedes all prior agreements, representations, negotiations, or positions taken by the Parties in this litigation not set forth herein.

44.     Both Parties to this document have participated in its drafting and, consequently, any ambiguity shall not be construed for or against either party.

45.     This Consent Decree shall inure to the benefit of and be binding upon the legal representatives of any successor of the Plaintiffs and Defendant.

46.     Costs of Notices. The cost of all notices hereunder or otherwise ordered by the Court shall be borne by Defendant.

47.     Signatories. Each undersigned representative of Defendant and the Attorney General for the State of Illinois certifies that he or she is authorized to enter into this Consent Decree and to execute and bind legally Defendant to its terms. Each undersigned representative of Plaintiffs certifies that he or she is authorized to enter into this Consent Decree and to execute and bind legally the Plaintiffs to its terms. Execution of this Consent Decree by signature is a condition precedent to the Consent Decree becoming effective and binding on the Parties. This Consent Decree may be executed in counterparts, each of which will be deemed to be an original and all of which taken together shall constitute a single instrument. This Consent Decree may be executed by a signature via facsimile transmission or electronic mail which shall be deemed the same as an original signature.

48.     The Court will retain jurisdiction to enforce the terms of the Consent Decree. To permit enforcement of the terms of this Consent Decree, the Parties agree that, should it become necessary to seek Court assistance as to enforcement of the Consent Decree, any party requesting relief shall request an order granting such relief that is narrowly drawn, extends no further than is necessary and is the least intrusive means for doing so.

49.     This Consent Decree resolves and provides the sole and exclusive remedy for all claims and issues arising from this action that were raised or could have been raised by or on behalf of the Named Plaintiffs and the Class certified by the Court. Defendant shall have no duties or obligations to the Named Plaintiffs or Class Members with regard to the claims for injunctive and declaratory relief in this action set forth in the Second Amended Complaint beyond the terms of this Consent Decree.

50.     This Consent Decree shall remain in effect until it is terminated pursuant to Section XIII, at which point this case shall be dismissed with prejudice.

## XIII.  TERMINATION

51.     The Parties, jointly or severally, may file a motion pursuant to Paragraph 38 and 52 above requesting termination of this Consent Decree at any time after eight years following the Approval Date, unless the basis for termination is an intervening change in circumstances, including but not limited to a change in law or legal precedent, relating to the underlying legal bases of the preceding litigation or Consent Decree.  A motion seeking to modify or terminate this Consent Decree due to a change in law or legal precedent may be brought at any time.

52.     This Consent Decree shall be terminated pursuant to a motion by the Parties if the Court finds that Defendant has achieved compliance with both Benchmarks described in Paragraph 35 above. The Court may modify or terminate this Consent Decree pursuant to a motion by either party as required by an intervening change in law or legal precedent relating to the preceding litigation or this Consent Decree.

SO ORDERED THIS ___ DAY OF _____, 2017

_____
Jorge L. Alonso

United States District Judge

EACH UNDERSIGNED PARTY enters into this Agreed Consent Decree in the matter of *NB., et al. v. Norwood,* Case No. 11-6866, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR NAMED AND CLASS PLAINTIFFS:

_____
Robert H. Farley, Jr.
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-369-0103

Date: _____

_____
Michelle N. Schneiderheinze
Hunziker Heck & Schneiderheinze
416 Main Street, 16th Floor
Peoria, IL 61602
Tel. 309-676-7777

Date: _____

_____
Mary Denise Cahill
Cahill & Associates
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-778-6500

Date: _____

FOR DEFENDANT, DIRECTOR OF ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES:

Title: Felicia F. Norwood, Director of the Department of Healthcare and Family Services
Date: 8-11-17 _____

_____
Title: _____
Date: _____

27

EACH UNDERSIGNED PARTY enters into this Agreed Consent Decree in the matter of

*NB., et al. v. Norwood,* Case No. 11-6866, pending in the United States District Court for the

Northern District of Illinois, Eastern Division.

FOR NAMED AND CLASS PLAINTIFFS:

Robert H. Farley, Jr.
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-369-0103

Date: 8-13-2017

Michelle N. Schneiderheinze
Hunziker Heck & Schneiderheinze
416 Main Street, 16th Floor
Peoria, IL 61602
Tel. 309-676-7777

Date: 8/14/2017

Mary Denise Cahill
Cahill & Associates
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-778-6500

Date: 8-13-2017

FOR DEFENDANT, DIRECTOR OF ILLINOIS DEPARTMENT OF HEALTHCARE
AND FAMILY SERVICES:

Title: Felicia F. Norwood, Director of the Department of Healthcare and Family Services
Date: 8-11-17

Title: _____
Date: _____

27